### Connecticut State Board of Labor Relations *v.* Board of Education of the Town of West Hartford

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued January 11—decision released March 13, 1979

*Russell L. Post, Jr.,* with whom was *O. Bradford Griffin, Jr.,* for the appellant (defendant).

*William R. Darcy,* general counsel, for the appellee (plaintiff).

BOGDANSKI, J. The proceedings which led to this appeal were initiated by the filing of a complaint with the Connecticut State Board of Labor Relations in which the West Hartford Education Association alleged that the West Hartford Board of Education had unilaterally changed the working conditions of summer school teachers in violation of § 10-153e (b) (4) of the Teacher Negotiation Act (General Statutes §§ 10-153a to 10-153j, inclusive). At the hearing before the State Board of Labor Relations held on May 18, 1977, the parties submit-

ted joint exhibits but presented no witnesses. The parties did, however, file a stipulation of facts.[1] On June 28, 1977, the labor board found the employer in violation of § 10-153e, holding that teachers employed during the summer were covered by the act. The labor board subsequently filed a petition in Superior Court for enforcement of its decision and order. The court affirmed the labor board's decision and the defendant has appealed to this court.

The issue raised by this appeal is whether summer school teachers are excluded from coverage under the Teacher Negotiation Act.

The board of education argues that employment in summer school or curriculum workshops is not subject to mandatory collective bargaining because summer school personnel need not be certified; that the employer's requirement of certification for summer school personnel does not create an obligation to bargain where no such obligation is imposed by statute; and that only as to school programs mandated by statute, i.e., the regular 180-day school year, is there a statutory duty to bargain collectively with teachers.

---

[1] "STIPULATION OF FACTS

1. The purpose of the summer school policy is to allow students to take courses during the summer. Students may retake courses they have failed during the regular September through June school year or they may take courses for enrichment or acceleration of their studies. Students receive credit for all courses taken.

2. Past practice for payment to a teacher who participated in teaching courses during the summer or who participated in the curriculum workshop was made on the basis of a percentage of the individual teacher's step on the salary schedule for the upcoming school year (i.e., the September through June regular school year following the summer workshop or course teaching).

3. The Board of Education has unilaterally changed the salary payment to a weighted average system.

4. The Board of Education has refused to negotiate over the change in the salary payment."

The association, in turn, contends that the teacher bargaining statute governs *all* labor relations between local boards of education and certified members of the teaching profession and therefore that teachers employed by school boards during the summer are covered by the collective bargaining statute. The association argues that the summer school program, where courses are taught for credit and where the curriculum for the ensuing year is developed and planned,[2] is but an extension of the regular school year; that the same skills, experience and competence required for the regular year are required for summer school; that labor problems arising during the summer, and involving members of the same staff as employed during the regular school year, would inevitably cause labor problems to extend into the regular year, and that both the bargaining and certification statutes recognize this continuity by covering the entire employment relation between teachers and school boards; and that no exception as to the statutory requirements of collective bargaining with teachers exists as to summer school personnel.

We note first that Connecticut has a specific act governing labor relations between local boards of education and their professional employees, §§ 10-153a to 10-153j, inclusive, and that the follow-

---

[2] "West Hartford Public Schools Summer Curriculum Workshop Application Overview: Summer curriculum workshops provide staff with an opportunity to design, plan, organize, and write curriculum courses of study, guidelines, teacher resources and/or student materials for a total program or for part of a program for the West Hartford School System. Participation in a workshop assumes a commitment to meet for the specified time of the workshop and to assist with implementing the results of the workshop during the school year."

ing comprehensive language appears at the very beginning of the act: *"Members of the teaching profession shall have and shall be protected in the exercise of the right . . . to negotiate . . . through representatives of their own choosing with respect to salaries and other conditions of employment . . . ."* General Statutes § 10-153a. (Emphasis added.)

The school board, nonetheless, contends that the duty to bargain collectively imposed upon it by the above statutes applies only to those school programs mandated by statute, i.e., the regular 180-day school year. The board, however, has been unable to point to anything in the applicable statutes which expressly so limits the duty to bargain.

In this connection we note that chapter 166 of the General Statutes, which contains the "Teacher Negotiation Act," provides for the establishment of two different bargaining units, i.e., an administrators' unit and a teachers' unit, and that the duty to bargain collectively applies to both such units. General Statutes §§ 10-153b (a) (1) and 10-153b (a) (2). Since it is common knowledge that administrators work more than 180 days a year, it is highly unlikely that the legislature intended to limit the duty to bargain to the 180 days of the regular school year.

Moreover there are strong reasons of public policy for not reading such a limitation into the statute. As pointed out by the association, disputes and controversies arising during a summer school session can be as productive of labor strife as disputes arising during the regular school year. Such disputes will also inevitably tend to spill over into the regular school year, adversely affecting the employment relations between the parties. By enacting the

Teacher Negotiation Act the legislature gave teachers the right to bargain collectively and imposed upon school boards the duty to negotiate with the representatives of the teachers. In so doing the legislature expressed the view that by requiring that disputes between the parties be submitted "to the mediating influence of negotiation" it was eliminating any need for resort to illegal and disruptive tactics, and that disputes between school boards and teachers were "more likely" of resolution and agreement by negotiation than by strike or otherwise. *West Hartford Education Assn., Inc.* v. *DeCourcy*, 162 Conn. 566, 584–85, 295 A.2d 526 (1972).

Under these circumstances, this court cannot "infer from the statute an exception to its provisions which the legislature has not prescribed either by word or implication." *Busko* v. *DeFilippo*, 162 Conn. 462, 471, 294 A.2d 510 (1972).

The school board next contends that summer school personnel are excluded from coverage under the Teacher Negotiation Act by § 10-153b (a) (2), which defines the teachers' bargaining unit as "the group of certified professional employees who are employed by a town or regional board of education in positions requiring a teaching or special services certificate . . . ."

The board contends that summer school personnel are not required by statute to be certified and therefore that the requirement of position certification in § 10-153b (a) (2) excludes such summer school personnel from the teachers' bargaining unit.

The short answer to the board's claim that teachers employed in the summer school program are not required by statute to be certified is that *all*

teachers are required to be certified by § 10-145 (the teacher certification statute). This statute expressly provides that *"[n]o teacher . . . shall be employed in any of the schools* of any town or regional district *unless* he possesses *an appropriate state certificate . . . ."* (Emphasis added.) Since the certification statute is, by its terms, all inclusive, the question of whether teachers employed by the West Hartford Board of Education in its summer school program, whether as classroom instructors or as curriculum planners, are required by statute to be certified must be answered in the affirmative.

When the language in § 10-153b (a) (2) defining the teachers' bargaining unit is read in conjunction with the language of § 10-145, requiring certification of all teachers, it becomes clear that the purpose of the position certification requirement in § 10-153b (a) (2) is to distinguish between *teachers,* i.e., persons employed in teaching positions, and the other certified professional employees employed by school boards, such as nurses, hygienists, librarians and dieticians. Under the terms of § 10-153b (a) (2), a nurse or a librarian, though employed by a school board and though certified, will not be included within the teachers' bargaining unit because he or she is not employed in a position requiring a teaching or special services certificate.

Where the meaning of a statute is plain and unambiguous, the enactment speaks for itself and there is no occasion to construe it. Its unequivocal meaning is not subject to modification by way of construction. *Holmquist* v. *Manson,* 168 Conn. 389, 393, 362 A.2d 971 (1975); *Hurlbut* v. *Lemelin,* 155 Conn. 68, 73, 230 A.2d 36 (1967); *State* v. *Springer,* 149 Conn. 244, 248, 178 A.2d 525 (1962). Section 10-153a

applies to *all* "members of the teaching profession" except those specifically excluded, and § 10-145 requires *all teachers* to be certified, without exception. We conclude therefore that there is no basis in the statutes for excluding teachers employed in summer school programs from the benefits and obligations of the Teacher Negotiation Act.

Finally it must be kept in mind that the statute being construed is a labor relations act; that labor relations acts are remedial enactments and as such should be liberally construed in order to accomplish their objectives; and that in furtherance of this principle, exceptions and exclusions are to be strictly construed. *Success Village Apartments, Inc.* v. *Local 376,* 175 Conn. 165, 168, 397 A.2d 85 (1978). In this regard, it is also well established that "courts should 'accord great deference to the construction given the statute by the agency charged with its enforcement.'" *Anderson* v. *Ludgin,* 175 Conn. 545, 555, 400 A.2d 712 (1978); *Investment Company Institute* v. *Camp,* 401 U.S. 617, 627, 91 S. Ct. 1091, 28 L. Ed. 2d 367 (1971); *New Haven* v. *United Illuminating Co.,* 168 Conn. 478, 493, 362 A.2d 785 (1975). We are mindful moreover of the fact that traditionally a very large degree of discretion has been accorded labor boards as regards bargaining unit determinations. *Success Village Apartments, Inc.* v. *Local 376,* supra; *Pittsburgh Plate Glass Co.* v. *National Labor Relations Board,* 313 U.S. 146, 165, 61 S. Ct. 908, 85 L. Ed. 1251 (1941).

Having found nothing in the collective bargaining statutes which requires the exclusion of summer school personnel from the coverage of the act, we must affirm the trial court's conclusion that the

labor board did not err in determining that the Teacher Negotiation Act includes within its coverage the relations between the West Hartford Board of Education and the teachers which it employs in its summer school programs.

There is no error.

In this opinion the other judges concurred.