CONNECTICUT EDUCATION ASSOCIATION ET AL. *v.* STATE BOARD OF LABOR RELATIONS ET AL. (3288)

DUPONT, C. J., HULL and DALY, Js.

Argued May 10—decision released September 17, 1985

*Ronald Cordilico,* with whom, on the brief, were *William J. Dolan, Constance Augsburger* and *Kimberly A. Knox,* law student intern, for the named plaintiff.

*James C. Ferguson,* for the plaintiff Connecticut State Federation of Teachers.

*J. Larry Foy,* for the named defendant.

*Joel M. Ellis,* with whom, on the brief, was *William S. Zeman,* for the defendant Connecticut State Council of AFSA Locals, AFL-CIO.

*Joseph I. Lieberman,* attorney general, and *Robert W. Garvey* and *Thomas P. Clifford III,* assistant attorneys general, filed a brief as amici curiae.

HULL, J. This case, which concerns the vital question of the right of displaced administrator unit personnel to bump[1] teacher unit personnel, was reserved on a stipulation under Practice Book §§ 3133 and 3134 for the advice of the Supreme Court by the trial court, *Edelberg, J.*, and was transferred to this court on June 11, 1984. See Practice Book § 3076.

The stipulation provides: "1. The facts upon which the questions arise are as follows:

"a. On July 16, 1982, the Connecticut State Council of AFSA Locals, AFL-CIO (hereinafter AFSA) filed with the Connecticut State Board of Labor Relations (hereinafter Labor Board) a petition for declaratory ruling pursuant to Section 4-176 of the Connecticut General Statutes raising certain questions under Section 10-153b—153c of the Connecticut General Statutes (hereinafter the Negotiations Act) and Section 10-151 of the Connecticut General Statutes (hereinafter the Tenure Act). AFSA's petition requested a declaratory ruling responsive to the questions set forth in subparagraph g, below.

"b. On August 15, 1983, the Labor Board issued a Decision and Declaratory Ruling (hereinafter Ruling) in response to said Petition filed by AFSA (see attached).

"c. On September 12, 1983, the Connecticut Education Association, a party to said proceeding before the Labor Board filed a complaint for a declaratory judgment in the Superior Court for Hartford-New Britain at Hartford seeking a determination of the validity of the Labor Board's said Ruling.

"d. AFSA made an application to be made a party defendant on October 26, 1983, which application was granted on November 7, 1983.

---

[1] For simplicity we will use throughout the term "bumping" as it is commonly used in labor law parlance.

"e. The Connecticut State Federation of Teachers [CSFT] made a Motion to Intervene as a party plaintiff on October 26, 1983, which Motion was granted on November 28, 1983.

"f. All the pleadings have been closed.

"g. The questions referred to in subparagraph a, above, and which were set forth in said AFSA petition are presented below.

(a) Whether under the Act Concerning School Board-Teacher Negotiations and the Teacher Tenure Act, it is a mandatory subject of bargaining for the administrators' unit and/or the teachers' unit that members of an administrators' unit whose positions have been eliminated or whose positions have been lost to other administrators, may bump into or be assigned to a position in the teachers' unit, which position (i) is held by a Tenured teacher, (ii) is held by a non-Tenured teacher pursuant to C.G.S. Sec. 10-151(b) or (iii) is unoccupied?

(b) If such a provision were to be negotiated between an administrators' unit and a school board providing for such bumping or assignment would it be enforceable notwithstanding a lack of agreement by the teachers' unit with such provision?

(c) If such a provision were to be negotiated between an administrators' unit and a school board providing for such bumping or assignment would it be enforceable if there was an existing provision in the collective bargaining agreement of the teachers' unit prohibiting members of the administrators' unit from bumping members of the teachers' unit or from being assigned to unoccupied positions in the teachers' unit?

(d) Whether under the Act Concerning School Board-Teacher Negotiations and the Teacher Tenure Act, it is a mandatory subject of bargaining for the administrators' unit and/or the teachers' unit that members of the administrators' unit whose positions have been eliminated or who have lost their positions to other

administrators, may *not* bump into positions held by members in the teachers' unit or be assigned to unoccupied positions in the teachers' unit?

(e) If such a provision is negotiated between a teachers' unit and a school board prohibiting such bumping or assignment, is said provision enforceable notwithstanding lack of agreement by the administrators' unit to such provision?

(f) If such a provision were to be negotiated between a teachers' unit and a school board prohibiting such bumping or assignment, could it be enforceable if there was an existing provision in the collective bargaining agreement of the administrators' unit permitting its members to bump members of the teachers' unit or permitting members of the administrators' unit to be assigned to unoccupied positions in the teachers' unit?

"h. The Labor Board's ruling on each of the above questions is set forth in paragraphs a.(i), a.(ii), a.(iii), b., c., d., e. and f. of the Order contained in its said Ruling. [See pp. 258–60, infra.]

"2. The questions upon which advice is sought are the same as those set forth in paragraph 1g, above, and they are incorporated herein by reference.

"3. The answers to the questions set forth in paragraph 1g, above, will determine, or are reasonably certain to enter into a determination of, the case.

"4. The present determination of the questions will be in the interest of simplicity, directness and economy in judicial action because,

"a. The plaintiffs, both state-wide public school labor organizations, represent in excess of 30,000 public school teachers in Connecticut. The questions raised herein most probably will arise again and again in the Superior Court as teachers are 'bumped' by administrators whose positions are being eliminated. This potentially voluminous litigation will take place in the form of appeals under C.G.S. Section 10-151 (also

known as the 'Teacher Fair Dismissal Law') pending a decision by the Supreme Court.

"b. As school closings occur, administrators will lose their positions and the question of whether they have the right to bump teachers will become increasingly important.

"c. There are many collective bargaining agreements across Connecticut between school boards and administrator units and teacher units containing reduction-in-force clauses which will be affected by judicial determination, thus making a present decision by the Supreme Court necessary.

"d. The issues raised in the Complaint involve matters of substantial public interest and in which delay may work a substantial injustice."

The ruling referred to in the stipulation contains the following order: "By virtue of and pursuant to the power vested in the Connecticut State Board of Labor Relations by the Act Concerning School Board-Teacher Negotiations and by Section 4-176 of the Connecticut General Statutes and Section 10-152e-26 of the Regulations of Connecticut State Agencies, it is hereby ORDERED and DECLARED that the questions presented in this Petition for Declaratory Ruling are answered as follows:

"a.(i) A collective bargaining agreement between a school board and the bargaining representative for a teacher unit which contains a layoff procedure giving tenured members of the teacher unit rights to bump other tenured members of the teacher unit, must give tenured displaced administrator unit members bumping rights which are equal to the bumping rights given to tenured teacher unit members in that no criteria for determining layoff which disadvantages displaced administrators solely because of their service as administrators may be applied to them. Subject to this equal treatment restriction, the subject of tenured

administrator unit members bumping tenured members of the teacher unit is a mandatory subject of bargaining for the exclusive representative of the teacher unit.

"The subject of tenured displaced administrator unit members bumping tenured members of the teacher unit is an illegal subject of bargaining for the bargaining representative of the administrator unit.

"a.(ii) A collective bargaining agreement between a school board and the bargaining representative for a teacher unit which contains a layoff procedure giving non-tenured members of the teacher unit rights to bump other non-tenured members of the teacher unit, must give non-tenured displaced administrator unit members bumping rights which are equal to the bumping rights given to non-tenured teacher unit members in that no criteria for determining layoff which disadvantages displaced administrators solely because of their service as administrators may be applied to them. Subject to this equal treatment restriction, the subject of non-tenured displaced administrator unit members bumping tenured members of the teacher unit is a mandatory subject of bargaining for the bargaining representative of the teacher unit.

"The subject of non-tenured displaced administrator unit members bumping non-tenured members of the teacher unit is an illegal subject of bargaining for the bargaining representative of the administrator unit.

"A tenured displaced administrator unit member must be permitted to bump a non-tenured member of the teacher unit if the tenured displaced administrator is qualified for the position held by the non-tenured member of the teacher unit. Any restriction placed on this right which is contained in a collective bargaining agreement involves an illegal subject of bargaining.

"a.(iii) A displaced member of the administrator unit must be assigned to an unoccupied position in the teacher unit if the displaced administrator is qualified

for the position, provided that if a qualified member of the teacher unit whose position has been eliminated or whose position has been lost to another teacher within the meaning of 10-151 (a) (2) also seeks that position in order to retain employment with the school board and the tenure status of the administrator unit member and the teacher unit member is the same (i.e., either both are tenured or both are non-tenured) the question of which person will assume the unoccupied position shall be determined by the criteria for layoff contained in the teacher unit collective bargaining agreement, except that said layoff procedure is subject to the equal treatment restriction referred to in a.(i) and a.(ii) above.

"Where the tenure status of the two persons in question is different (i.e., one is tenured and one is non-tenured) the person with tenured status will be entitled to the position.

"b. No, because the subject of who will be selected for or retained in teacher unit positions is an illegal subject of bargaining for the administrator unit.

"c. The answer here is the same as b. However, the hypothetical provision in the teacher unit collective bargaining agreement would concern an illegal subject of bargaining to the extent that it denies the right of tenured displaced administrator unit members to bump non-tenured teacher unit members and to the extent that it violates the equal treatment restrictions set forth above.

"d. This question is answered in Sections a.(i), a.(ii), and a.(iii) above.

"e. This question is answered in Sections a.(i), a.(ii), and a.(iii) above.

"f. This question is answered in Sections a.(i), a.(ii), and a.(iii) above."

The labor board rendered an exhaustive and scholarly decision and declaratory ruling to which we can

add but little. It clearly displays the labor board's thoughtful analysis of the questions involved in the light of the history and intent of the pertinent statutes and its administrative expertise in this highly technical area.

The issue involved boils down to two questions: (1) whether General Statutes § 10-153a et seq. (the Teacher Negotiation Act) and General Statutes § 10-151[2] (the Teacher Tenure Act) when read together, allow an administrator unit member whose position has been eliminated or who has lost his position to another administrator (a displaced administrator) to retain his employment by displacing or bumping a teacher unit member from his position; and (2) if this is allowed, which unit's bargaining representative is permitted or required to negotiate layoff criteria and procedures.[3] The board concluded that the two statutes permit displaced administrators to bump into the teacher unit and that layoff procedures concerning such bumping situations are a mandatory subject of bargaining for the teacher unit bargaining representative. Any such agreement must give displaced administrators bumping rights equal to teacher unit members, in that no criteria for determining layoff procedures which disadvantages displaced administrators solely because of their service as administrators may be applied to them.

The plaintiff Connecticut Education Association (CEA) claims: (1) that the usual deference paid by the courts to the construction of a statute by the agency charged with its administration is inapplicable in this case since this subject is beyond the board's expertise

---

[2] In 1983, General Statutes § 10-151 was amended by Public Acts 1983, No. 398, § 1, effective July 1, 1983. As a result of this amendment, subsections (a) through (f) were rewritten and renumbered. The reference in this opinion are to the subsection numbers as they existed prior to the 1983 amendments.

[3] The criteria most often set forth in collective bargaining agreements are either various types of seniority and/or considerations of ability or relative ability.

and inconsistent with General Statutes § 10-153a et seq. because the statute implies that the court may exercise a more flexible review; (2) that the labor board erred in concluding that displaced administrators can bump into a teacher unit; (3) that the labor board erred in its corollary conclusion that the subject of administrators bumping into a teacher unit is a mandatory subject for bargaining by the teacher unit; and (4) that the labor board's decision circumvented basic tenets of labor law, specifically those of separation of units and exclusivity of dealing.

The plaintiff, Connecticut State Federation of Teachers, (CSFT) claims error in a narrower area than does the CEA. The CSFT agrees with the board's conclusions concerning bumping into a teacher unit and the requirement that the teacher unit must bargain collectively concerning this subject. It claims, however, that the labor board erred by administratively creating an equal treatment restriction on the teacher unit's negotiation of a layoff procedure. The CSFT claims, as does the CEA, that the board's decision undermines the fundamental principles of General Statutes § 10-153a et seq. (the Teacher Negotiation Act) concerning separate bargaining units, and the principle of exclusivity in its assigned area for each unit.

The defendant appellees, Connecticut State Board of Labor Relations and Connecticut State Council of American Federation of School Administrators Locals, AFL-CIO, agree with the decision of the board.[4]

We conclude that the board's decision and declaratory ruling were correct and adopt its answers to the questions propounded as the answers of this court.

---

[4] The State Board of Education as amicus curiae joined with the other appellees in supporting the board's decision.

# I

## THE STATUTORY FRAMEWORK

The Teacher Tenure Act, General Statutes § 10-151, as amended by Public Acts 1983, No. 398, § 1, effective on July 1, 1983, provides in pertinent part:[5] "(a) For the purposes of this section: . . . (2) The term 'teacher' shall include each certified professional employee below the rank of superintendent employed by a board of education in a position requiring a certificate issued by the state board of education . . . . (c) The contract of employment of a teacher who has not attained tenure may be terminated at any time for any of the reasons enumerated in subdivisions (1) to (6), inclusive, of subsection (d) of this section; otherwise the contract of such teacher shall be continued into the next school year unless such teacher receives written notice by April first in one school year that such contract will not be renewed for the following year. . . . (d) The contract of employment of a teacher who has attained tenure shall be continued from school year to school year, except that it may be terminated at any time for one or more of the following reasons: (1) Inefficiency or incompetence; (2) insubordination against reasonable rules of the board of education; (3) moral misconduct; (4) disability, as shown by competent medical evidence; (5) elimination of the position to which the teacher was appointed or loss of a position to another teacher, if no other position exists to which such teacher may be appointed if qualified, provided such teacher, if qualified, shall be appointed to a position held by a teacher who has not attained tenure, and provided further that determination of the

---

[5] The changes made by Public Acts 1983, No. 398 have no bearing on the question in the present case. That act, effective on July 1, 1983, expressly states that it does not apply to "layoff, nonrenewal or termination proceedings initiated prior to July 1, 1983."

individual contract or contracts of employment to be terminated shall be made in accordance with either (A) a provision for a layoff procedure agreed upon by the board of education and the exclusive employees' representative organization or (B) in the absence of such agreement, a written policy of the board of education; or (6) other due and sufficient cause. Nothing in this section or in any other section of the general statutes or of any special act shall preclude a board of education from making an agreement with an exclusive bargaining representative which contains a recall provision. . . . "

This section recognizes that a teacher who is tenured may be terminated in accordance with a procedure negotiated by an exclusive employees' representative and the board of education, subject to the proviso that when a tenured teacher's position is eliminated such tenured teacher may bump into a position held by a non-tenured teacher if the tenured teacher is qualified for the position bumped into.[6]

In 1965, the legislature enacted Public Acts 1965, No. 298, § 1, General Statutes § 10-153b, which established collective bargaining for teachers. The Teacher Negotiation Act; General Statutes §§ 10-153a through 10-153n; provides that representatives designated or elected in accordance with this section shall be the exclusive representative of all the employees in such unit for the purposes of negotiating with respect to salaries and other conditions of employment. In 1967, General Statutes, Cum. Sup. 1965, § 10-153b of the Teacher Negotiation Act was amended by Public Acts 1967, No. 752, § 1, to separate bargaining units clearly as follows: "A representative organization may be designated or elected for such purpose by a majority of all employees below the rank of superintendent in the entire

---

[6] This bumping provision was enacted as a result of *Garovoy* v. *Board of Education,* 178 Conn. 618, 424 A.2d 297 (1979).

group of such employees of a board of education or school district or by a majority of such employees in separate units as described in subsection (b). . . . " In 1969, General Statutes, Sup. 1969, § 10-153b was further amended by Public Acts 1969, No. 811, § 2 to clarify the composition of these bargaining units. Section 10-153b, as amended, provided in pertinent part that: "(a) Whenever used in sections 10-153b to 10-153f, inclusive, of the general statutes: (1) The 'administrators' unit' means those certified professional employees in a school district who are employed in positions requiring an intermediate administrator or supervisor certificate, or the equivalent thereof, and are not excluded from the purview of this act. (2) The 'teachers' unit' means the group of certified professional employees who are employed by a town or regional board of education in positions requiring a teaching or special services certificate and are not included in the administrators' unit or excluded from the purview of this act."

## II

### Deference to be Accorded to the Labor Board's Construction of Both the Teacher Negotiation Act and the Teacher Tenure Act

The plaintiff CEA argues that deference to the labor board's decision and declaratory ruling should not be accorded in this case because the board has no express statutory authority to render decisions pursuant to General Statutes § 10-151 (the Teacher Tenure Act) and because it did so in an arbitrary manner. The later claim is just another way of arguing that the board erred and will not be considered separately at this point.

Concerning the board's authority, the CEA conceded that the labor board has the authority to rule on General Statutes §§ 10-153a through 10-153n (the Teacher Negotiation Act) but argued that the labor board does

not have primary authority concerning General Statutes § 10-151 (the Teacher Tenure Act). Since it was necessary for the labor board, in interpreting the Teacher Negotiation Act, to read it together with the Teacher Tenure Act, we conclude that the usual deference shown to administrative decisions should be accorded in this case. The portion of the Teacher Tenure Act involved deals primarily with the subject matter of collective bargaining. It would exalt form over substance, in view of the necessary interrelationship of the two acts involved in this case, to separate the two acts when considering the deference due to administrative decisions.

"[I]t is also well established that 'courts should "accord deference to the construction given the statute by the agency charged with its enforcement." ' " *State Board of Labor Relations* v. *Board of Education,* 177 Conn. 68, 74, 411 A.2d 28 (1979), quoting *Anderson* v. *Ludgin,* 175 Conn. 545, 555, 400 A.2d 712 (1978); see also Holden & Daly, Connecticut Evidence (1966 & Sup. 1983) § 50. This deference by the courts to administrative decisions is based on several factors. "These factors are the respect due to the governmental agencies charged with administration, their competence, expertness, experience, and informed judgment and the fact that they frequently are the drafters of the law they interpret. . . . " 2 Am. Jur. 2d, Administrative Law § 242.

The appropriate deference which should be accorded by our state courts to decisions of the labor board was set forth in an earlier case arising under the Teacher Negotiation Act in which the labor board was required to construe that act in light of the Connecticut Teacher Certification Act, § 10-145 of the General Statutes: "[C]ourts should 'accord great deference to the construction given the statute by the agency charged with its enforcement.' *Anderson* v. *Ludgin,* 175 Conn. 545,

555, 400 A.2d 712 (1978); *Investment Company Institute* v. *Camp,* 401 U.S. 617, 627, 91 S. Ct. 1091, 28 L. Ed. 2d 367 (1971); *New Haven* v. *United Illuminating Co.,* 168 Conn. 478, 493, 362 A.2d 785 (1975). We are mindful moreover of the fact that traditionally a very large degree of discretion has been accorded labor boards as regards bargaining unit determinations. *Success Village Apartments, Inc.* v. *Local 376,* [175 Conn. 165, 168, 397 A.2d 85 (1978)]; *Pittsburgh Plate Glass Co.* v. *National Labor Relations Board,* 313 U.S. 146, 165, 61 S. Ct. 908, 85 L. Ed. 1251 (1941)." *Connecticut State Board of Labor Relations* v. *Board of Education,* 177 Conn. 68, 74, 411 A.2d 28 (1979).

We note further that an amicus curiae brief filed by the attorney general et al. on behalf of the state board of education fully supports the labor board's construction of the Teacher Tenure Act.

### III

CLAIMED VIOLATION BY THE LABOR BOARD OF THE
PRINCIPLES OF SEPARATE UNITS AND
EXCLUSIVITY OF DEALING

Although these two principles were briefed and argued separately by the plaintiffs, we conclude that they are merely two aspects of the same long standing general principle of labor law and we will consider them together.

The labor board declared certain legal principles underlying the dispute in this case as follows: "It is well settled in labor law that layoff procedures are a mandatory subject of bargaining. *Ford Motor Co.* v. *Huffman,* 345 U.S. 330 [73 S. Ct. 681, 97 L. Ed. 1048 (1953)] . . . . It is also settled in labor law that, generally speaking, the exclusive bargaining representative for one bargaining unit may not negotiate the conditions of employment of members of a second bargaining unit,

at least not without the consent of the bargaining representative of the second bargaining unit where the negotiations would impose a detriment on the members of that unit. . . . Likewise, it is ordinarily illegal for the exclusive bargaining representative of one unit to require the bargaining representative of a second unit to bargain for the terms and conditions of employment of employees in the first unit. *Local 1219, Int'l Assn. of Firefighters* v. *Conn. Labor Relations Board,* 171 Conn. 342 [370 A.2d 952] (1976) . . . .

"Aside from what the duty to bargain in labor relations statutes may otherwise require, both this Labor Board, other labor boards and courts have recognized that the borders of negotiability are sometimes affected or fixed by statutes other than the labor relations statutes themselves and that these other statutes must be accorded their intended force and effect. See e.g., Federal anti-trust law restrictions, *United Mine Workers* v. *Pennington,* 381 U.S. 657, [85 S. Ct. 1585, 14 L. Ed. 2d 626 (1965)]; payroll deductions required by federal and state law, *Town of East Haven,* [State Board of Labor Relations] Decision No. 1337 (1975); retirement provisions set by state law, *Jacobs* v. *New Jersey Highway Authority,* 54 N.J. 393 [255 A.2d 266] (1969); *State* v. *State Supervisory Employees Ass'n,* 78 N.J. 54, 98, [393 A.2d 233] LRRM 3267 (1978); *Fairlawn Ed. Assn.* v. *Board of Education,* 102 LRRM 2207 (1979)."

The labor board then found that it was necessary to construe the Teacher Tenure Act as well as the Teacher Negotiation Act to decide the questions presented. In doing so, it relied on the presumption that the legislature enacts statutes in view of other existing statutes and that when viewed together the statutes as a whole are intended to be read so as to make one consistent body of law, citing *Budkofsky* v. *Commission of Motor Vehicles,* 177 Conn. 588, 419 A.2d 333 (1979).

In analyzing the effect of the Teacher Tenure Act, the labor board noted: (1) Under General Statutes § 10-151 (a) (2), administrator unit members and teacher unit members are considered as one class of teachers for purposes of rights under the tenure act; (2) under General Statutes § 10-151 (d) (5), a displaced tenured teacher can bump a nontenured teacher and a tenured teacher can bump a tenured teacher; (3) under General Statutes § 10-151 (d) (5) nontenured teachers may bump nontenured teachers; (4) under General Statutes § 10-151 (d) (5) such bumping shall occur: "in accordance with either (A) a provision for a layoff procedure agreed upon by the board of education and the exclusive employees' representative organization or (B) in the absence of such agreement, a written policy of the board of education"; (5) in the Teacher Tenure Act no preference is expressed for the retention of teacher unit teachers over displaced administrator unit teachers; (6) the clear legislative intent is that administration unit teachers are to have the same degree of employment security as teacher unit personnel including the right to bump in accordance with a layoff procedure; and (7) teachers, whether in the administrative unit or teacher unit, are to be treated equally as members of the same class and administrators who are displaced must be given the same right to bump teachers in the teacher unit as are members of that unit.

We concur entirely with the board's reasoning and conclusions concerning this issue. The single determinative issue of statutory interpretation rests firmly on the creation of one class of teachers, some of whom are administrators, and all of whom have equal bumping rights as teachers. Although the principles of separateness of units and exclusivity of dealing are generally applicable, they must yield to the legislative determination that for purposes of bumping rights the

classification of teachers takes precedence over these concepts. This conclusion is consistent with *Delagorges* v. *Board of Education,* 176 Conn. 630, 410 A.2d 461 (1979). In *Delagorges,* the court held that the transfer of two high school administrators to classroom positions was merely a reassignment which did not entitle the administrators to judicial review of the board of education's decision under the Teacher Tenure Act. The *Delagorges* case did not involve bumping rights. Nevertheless, the court's conclusion that administrators did not have tenure as administrators but only as teachers firmly buttresses the conclusion we have reached.

The arguments of the plaintiff CEA regarding separateness of units and exclusivity of dealing are wide of the mark. There is no question concerning the law in this regard. Moreover, the CEA's reliance on these principles hopscotches over the legislature's creating out of the class of teachers, who happen for most purposes to be members of separate units, an overall unit for purposes of employment security.

Any lingering doubt that may be raised concerning the court's conclusion is dispelled by examination of General Statutes § 10-145d, not cited by the labor board or any parties to this case. This section concerns, in pertinent part, the adoption of state board regulations for teacher certificates and the adoption of regulations for school business administrators. Subsection (d)[7] provides: "Any individual certified as a school business administrator pursuant to regulations adopted by the

---

[7] Although subsection (d) of General Statutes § 10-145d was not effective until July 1, 1984; Public Acts 1984, No. 255, § 8; it is a helpful expression of legislative intent. " 'An amendment which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act.' *Tax Commissioner* v. *Estate of Bissell,* 173 Conn. 232, 246, 377 A.2d 305 (1977)." *Lee* v. *Board of Education,* 181 Conn. 69, 75, 434 A.2d 333 (1980).

state board in accordance with the provisions of subsection (b) of this section, shall not be deemed to be included in the definition of 'teacher' in subdivision (2) of subsection (a) of section 10-151 solely by reason of such certification, provided any such individual who holds a regular teacher's certificate issued by the state board of education and is employed as a teacher, principal, supervisor or school superintendent shall not be excluded from such definition." This definition, not otherwise related to the issues in this case, emphasizes strongly the all important concept in the Teacher Tenure Act that for its purposes a certified teacher remains a part of the teacher class regardless of what other administrative positions might be attained.[8]

Concerning the next question, we cannot improve on the reasoning or exposition of the labor board which follows:

"Having proceeded this far, we must now decide which bargaining representative (i.e., administrator unit's or teacher unit's or both) has the right to negotiate a layoff procedure which will determine the circumstances under which displaced administrators may bump teacher bargaining unit members. As was indicated earlier in this opinion and as was stated expressly in *Chemical Workers* v. *Pittsburgh Glass Co.*, 404 U.S. 157, 92 S. Ct. 383, [30 L. Ed. 2d 341], 78 LRRM 2974 (1971), the general rule in labor relations law is that the scope of the bargaining unit controls the extent of the right and duty to bargain. In other words, those subjects which can be termed a mandatory subject of bargaining between an employer and the bargaining representative for a particular unit are only those subjects which concern the conditions of employment of the employees in that bargaining unit. However, it is

---

[8] We offer no explanation of the apparent conflict between this section and General Statutes § 10-151 (a) (2) which restricts the term teacher to those certified employees below that of the superintendent.

sometimes contrary to the reality of the workplace to argue that a given subject impacts only the members of a single bargaining unit. It is obvious that in the most literal sense of the phrase, conditions of employment of both administrator unit and teacher unit members will be affected by procedures which determine bumping rights of displaced administrators *vis a vis* members of the teacher unit. *Hamden Board of Education,* [State Board of Labor Relations] Decision No. 2087 (1981). This reality raises the question of whether it is necessary for both units to negotiate identical contractual provisions covering cross-unit bumping in order for such questions to be determined by the collective bargaining process. We think the answer to this question is no. The Negotiations Act provides for a highly structured negotiation and impasse resolution procedure (i.e., mediation and arbitration) which throughout is directed to only bilateral (i.e., single unit) bargaining between boards of education and unions. Section 10-153f of the Negotiations Act. There is no guidance in either the Negotiations Act or the Tenure Act on how such multilateral bargaining would be handled. Given the lack of guidance for multilateral bargaining and what we see as extreme if not insoluble procedural and practical difficulties to such an approach, the likelihood for successful multilateral collective bargaining to occur on the subject in question appears to be remote at best. This result would seriously frustrate the often stated policy of our State embodied in our labor relations statutes (and in the Tenure Act with respect to layoff procedures) that conditions of employment for employees who have chosen to become organized for purposes of collective bargaining should be resolved through the collective bargaining process. See, e.g., *West Hartford Education Assn.* v. *DeCourcy,* [162 Conn. 566, 295 A.2d 526 (1972)]; *Connecticut State Board of Labor Relations* v. *Board of*

*Education,* [177 Conn. 68, 411 A.2d 28 (1979)]; *New Haven* v. *State Board of Labor Relations,* 36 Conn. Sup. 18 [410 A.2d 140] (1979). In addition, and presumably with legislative awareness of the bilateral bargaining framework of the Negotiations Act, Section 10-151 (d) (5) (A) itself speaks in singular terms of a 'layoff procedure agreed upon by the board of education and *the* exclusive employees' representative organization.' We conclude that the Legislature did not intend to require that cross-unit bumping questions be resolved by ensnarling school boards and bargaining representatives in multilateral negotiations. The question is therefore narrowed to whether it is the administrator unit bargaining representative or the teacher unit bargaining representative which has the obligation and the right to negotiate layoff procedures which cover the subject of cross-unit bumping. In other words, for which bargaining unit is this subject a mandatory subject of bargaining. We believe that it is the teacher unit bargaining representative. As shall be explained, our decision is based on considerations of reasonableness and principles of labor relations law.

"As has been stated, procedures for bumping of teacher unit members by displaced administrators concern conditions of employment for members of both units. However, it is significant that the position which the competing applicants would be seeking is a position in the teachers' unit. In other words, the question in such conflicts will always be one of [sic] which applicant is entitled to a teacher unit position. It therefore seems more logical and appropriate to us that the layoff procedure in the teacher unit collective bargaining agreement should control the determination of which person is entitled to such a position. In addition, there is no doubt that a procedure which provides opportunity for displaced administrators to bump into a teacher unit position must constitute a benefit and not a detriment to displaced administrators. In *Regional School*

*District #18 Teachers Association,* [State Board of Labor Relations Decision No. 2003 (1981)], we distinguished the conferring of such a benefit on displaced administrators from cases in which one bargaining unit's representative attempted to impose a detriment on members of another bargaining unit. We also stated that negotiating an advantageous bumping benefit for administrators did not constitute a breach of the teacher unit representative's duty of fair representation to its own bargaining unit members and that such a provision is consistent with the public policy of the State embodied in the Tenure Act. Writing for the Labor Board in that decision, our late Chairman Fleming James, Jr. thoroughly discussed these points as follows:

"The Association points out that there are in the district two distinct bargaining units: one for teachers, another for administrators. This much is conceded. It then argues that, as the representative of the teachers' unit, the Association may not legitimately be required to bargain about giving lay-off rights to members of the administrators' unit in the event of reduction of professional personnel. Such a matter, so runs the argument, is an illegal subject of bargaining for the Association because it represents the teachers exclusively and has no authority to represent administrators, and because the School Board's proposal would compel the Association to breach its duty of fair representation of its own unit. We reject these claims and hold that the matter of layoff rights for administrators is not an illegal subject of bargaining for the Association on the grounds claimed.

"The Association's first point seeks to draw on the authority of our decisions in *City of Bridgeport,* Dec. No. 1648 (1978); *City of Middletown,* Dec. No. 1669 (1978); and *City of New London,* Dec. No. 1128 (1973). In these cases we held that the parties to a contract

could not by its terms interfere with or impair the rights under our labor laws of third parties who were not privies to the contract. Thus we held that a clause in a firefighter's contract that bound the city to give to firemen any greater benefits than policemen were able to negotiate in a later contract with the police union imposed an illegal restraint on the police union's negotiation rights and therefore constituted a violation of the Municipal Employee Relations Act. See also *Local 1219, Int'l Assn. of Firefighters* v. *Conn. Labor Relations Board,* 171 Conn. 342 [370 A.2d 952] (1976). This line of cases is inapplicable to the present situation. The clause in the present contract with the teachers seeks to impose no burden or disadvantage on the administrators. It seeks instead to accord them an advantageous option. In no way that we can see would this interfere with the administrators' statutory rights. Nor is there any general principle that a union is powerless to make concessions for its bargaining unit in favor of outsiders to the unit. It may, for instance, agree that bargaining unit work may be done by supervisors or by independent contractors under specified circumstances.

"The Association's second point is that it will breach its duty of fair representation if it agrees to lay-off rights for administrators that are disadvantageous to members of its own unit. As a broad general proposition this cannot stand analysis. The whole process of collective bargaining is one of give and take—of compromise. And in the course of this process each side often yields to a demand of the other so that the particular result is disadvantageous to the party who yields. If a union breached its duty of fair representation of unit members every time it made a concession, collective bargaining would be impossible.

"Conceivably some concessions might be so great and so improvident as to amount to be a betrayal of a union's obligation, but there is no evidence even sug-

gesting that this was the case here. On the contrary the lay-off provisions of the existing contract conform to the provisions of the State Teachers' Tenure Act which presumably embody the public policy of the State. [General Statutes] Section 10-151 (b) and (c). See *Delagorges* v. *West Haven Bd. of Ed.,* 176 Conn. 630 [410 A.2d 401] (1979) . . . ."

As before, we find the labor board's conclusions unexceptionable.

Finally the labor board decided that: "Any layoff procedure which is negotiated must, in light of the principle of equal treatment embodied in Section 10-151 (a) (2) of the Tenure Act, not discriminate or in any way disadvantage a displaced administrator solely because of his service as an administrator. In other words, all criteria which determine the bumping rights of displaced administrators *vis a vis* teacher unit members must also be capable of application to teacher unit members and must in fact be applicable to teacher unit members. To the extent that a proposal would violate this stricture it is an illegal subject of bargaining because it conflicts with the Tenure Act and for the same reason to the extent a provision in a teacher unit collective bargaining agreement violates the stricture, it is void and unenforceable to the extent of its illegality."

We concur with this conclusion which logically and necessarily follows from the Teacher Tenure Act, once the threshold question of equal bumping rights for administrators and teachers has been determined.

For the reasons stated, we adopt in toto, as the answers of this court to the reserved questions, the answers promulgated by the labor board as set forth above.

No costs will be taxed in this court in favor of either party.

In this opinion the other judges concurred.