ELLIS SHEILA FRANKE BERNE *v.* TOWN OF STRATFORD
(8425)

DUPONT, C. J., SPALLONE and FOTI, Js.

Argued September 28—decision released December 11, 1990

*Laurence V. Parnoff,* with whom, on the brief, were *Debra L. Arganese* and *David A. Scalzi,* for the appellant (plaintiff).

*Robert J. Mead,* with whom, on the brief, was *Anthony M. Guerrera,* for the appellee (defendant).

SPALLONE, J. In this action for a permanent injunction, the plaintiff appeals following the trial court's granting of the defendant's motion for summary judgment. We reverse the decision of the trial court.

The record reveals the following facts. The plaintiff, Ellis Berne, owns an undeveloped parcel of land located at 171 Beaver Dam Road in Stratford. In 1970, the

defendant town of Stratford acquired a right-of-way over Beaver Dam Road and, in 1984, decided to improve and pave the roadway. On July 14, 1986, the Stratford town council approved a contract for the improvement of Beaver Dam Road and authorized the town administrator to proceed with a taking, by eminent domain, of two permanent drainage easements across the plaintiff's property and two temporary construction easements adjacent to the permanent easements.

On August 27, 1986, the defendant commenced condemnation proceedings for the taking by filing its statement of compensation. The defendant did not provide the plaintiff with notice and a public hearing before undertaking this action. In response, the plaintiff commenced an action for a permanent injunction seeking to restrain the defendant from taking the easements. The plaintiff claimed that the defendant had violated its charter by not giving formal notice or holding a public hearing prior to the commencement of condemnation proceedings. After a full hearing, the trial court, *Meadow, J.,* found that the defendant's charter required notice and a hearing prior to the taking, and, thus, granted a temporary injunction restraining the defendant from taking the easements.

During a subsequent hearing held to determine whether to convert the temporary injunction to a permanent injunction, both the plaintiff and the defendant filed motions for summary judgment. The trial court, *Zoarski, J.,* finding that the defendant's charter did not require notice and a hearing before the taking, denied the plaintiff's motion and granted the defendant's motion. The temporary injunction was lifted and judgment was rendered for the defendant.

The fact that no formal notice was given and no public hearing was held prior to the defendant's taking is not

in dispute. Under state eminent domain proceedings, no such notice or hearing is required. General Statutes §§ 48-6, 48-12 and 8-130 through 8-133. Where the taking is for public use, the due process clause of the fourteenth amendment to the United States constitution does not require that the taking be determined upon notice and hearing. *Bragg* v. *Weaver,* 251 U.S. 57, 58–59, 40 S. Ct. 62, 64 L. Ed. 135 (1919). Section 6.4.2 of the defendant's charter, however, provides that "[b]efore any public work or improvement shall be undertaken, the council shall give notice to all persons whose property *will be* affected thereby that such public work or improvement is *proposed* to be undertaken. . . ." (Emphasis added.)[1]

Section 6.4.1[2] of the defendant's charter defines "public work or improvement" as including the

[1] Section 6.4.2 of the defendant's charter provides: "Before any public work or improvement shall be undertaken, the council shall give notice to all persons whose property will be affected thereby that such public work or improvement is proposed to be undertaken. Such notice shall be signed by the town clerk, shall describe in general terms the nature of the public work or improvement to be undertaken and shall specify a time and place when all persons whose property is to be affected thereby may appear and be heard in relation thereto. Such notice shall be filed in the office of the town clerk, and he shall cause it to be published twice, the last time at least five days before the date of hearing in some newspaper having a circulation in the town."

[2] "Sec. 6.4.1. DEFINITIONS.

"As used in sections 6.4.2 to 6.4.11, inclusive, the term 'public work or improvement' shall include any of the following, or any combination of the following: the laying out, construction, alteration, widening, straightening, grading, improving or repairing of any street, alley or other public way; and the laying out, construction, alteration, improvement or repairing of any curb, gutter, sidewalk, or storm sewer over, upon, adjacent to or under any street, alley or other public way; and the laying out, construction, alteration, extension, enlargement and repairing of the sanitary sewerage system and sewage disposal plant of the town. The term 'council' shall include any agency, committee or commission empowered by the town council to act in such matter. The terms 'property' and 'property affected thereby' shall include all land, with or without improvements thereon, and all other property of any kind or nature, damaged or benefited as an inci-

"improving or repairing of any street." That section also defines the terms "property" and "property affected thereby" as including "all land, with or without improvements thereon . . . damaged or benefited as an incident to any public work or improvement, the owners of which may . . . be paid damages for the taking or damaging thereof."

It is clear, therefore, that a "public work or improvement" includes the construction and the improvement of a street and encompasses the drainage system necessary for that improvement. Notice must be given, before that proposal is undertaken, to "all persons whose property *will be* affected thereby." The words *"will be"* connote futurity; notice must be given to those whose property will be, in the future, affected by the public work or improvement. "Property affected" includes that upon which the owners "may be paid damages for the taking," such as the property in this case. With these definitions in mind we might reasonably restate these charter provisions as follows: Notice must be given to and a public hearing held for those persons whose property will be, at some future time, affected by the taking of that property as the result of the undertaking of a public work or improvement such as the construction of a storm water drainage system.

The construction of the storm drainage system is a public work or improvement. It was being undertaken by means of the taking of the plaintiff's property. Therefore, the Stratford charter required notice and a public hearing before the taking.[3]

dent to any public work or improvement, the owners of which may be assessed to pay for such public work or improvement or the owners of which may be paid damages for the taking or damaging thereof."

[3] The defendant asserts that, if construction had not started on the drainage system, the public work or improvement had not been undertaken. Such an interpretation would render this charter section meaningless. If the taking of property did not constitute the undertaking of a public work or

We recognize that proposed public works go through various stages of approval and implementation, and understand that it would be impossible for the town to give notice to all those whose property "will be affected" before it can determine who those persons are. A town must engage in some planning and engineering activity before it can determine whether a proposal is feasible, and, if so, which property owners "will be" affected by the proposal. For example, the town must be able to determine whether a roadway requires any storm drainage and, if so, where that drainage might be placed before it can determine which properties will be affected. It is clear in this case, however, that the storm drainage system for Beaver Dam Road was being "undertaken" when the town council voted to take the plaintiff's property. At that point, the town had clearly determined that the plaintiff's property was going to be affected.

The trial court, in its memorandum of decision, expressly stated: "The Town had not, at the time of the June 29, 1987 hearing, undertaken any public work or improvement on plaintiff's property." This narrow reading of § 6.4.2, in isolation of § 6.4.1, ignores the fact that the latter charter provision mandates a public hearing with notice prior to a condemnation proceeding. " ' ' "Where the meaning of a [charter provision] is plain and unambiguous, the enactment speaks for itself and there is no occasion to construe it." ' ' " *State* v. *James,* 197 Conn. 358, 363, 497 A.2d 402 (1985); *Grievance Committee* v. *Trantolo,* 192 Conn. 15, 22, 470 A.2d 228 (1984); *Connecticut State Board of Labor Relations* v. *Board of Education,* 177 Conn. 68, 73, 411 A.2d 28 (1979). The requirements of the charter provision are clear. Notice and a hearing regarding a proposed

improvement, the town could take any desired properties without notice or a hearing. After the taking, there would be no persons whose property would be affected by the public work or improvement, other than the town, and, thus, no one entitled to notice or a hearing.

public work or improvement must be given prior to the decision to take property in furtherance of that proposal.

The defendant did not follow its own charter provisions when it initiated the taking. It is axiomatic that " '[w]here the municipal charter prescribes a particular procedure by which a specific act is to be done or a power is to be performed, that procedure must be followed for the act to be lawful.' *Caldrello* v. *Planning Board,* 193 Conn. 387, 391, 476 A.2d 1063 (1984)." *Norwalk* v. *Board of Labor Relations,* 206 Conn. 449, 452, 538 A.2d 694 (1988). Accordingly, the defendant's attempted condemnation of the plaintiff's property is unlawful and is, therefore, null and void.

Our resolution of the issue of lack of notice is dispositive of this appeal. We hold that because the trial court improperly granted summary judgment for the defendant a remand is necessary for a hearing to be held to determine whether a permanent injunction should be ordered.

The judgment is reversed and the case is remanded with direction to reinstate the temporary injunction and to conduct a hearing to determine whether a permanent injunction is appropriate in this matter.

In this opinion the other judges concurred.

