[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTIONS FOR SUMMARY JUDGMENT (120 and 121)
This negligence action is brought by the minor plaintiff, Courtney Saccente, by her mother, Stephanie Saccente, against the Defendants, Edmund LaFlamme Sr., estate of Sandra LaFlamme, and Emer Coyne, doing business as Legend Farm. On April 29, 1999 the Plaintiff was participating in a horseback-riding lesson at Legend Farm given by an agent or employee of the Defendants. The Plaintiff alleges that an agent or employee of the Defendants carried a hose across the riding ring where the lesson was taking place and left the hose there. The Plaintiff alleges that the hose obstructed the path of the horse the Plaintiff was riding and the horse tripped over the hose causing the horse to be startled and to gallop off at a high rate off speed. This caused the Plaintiff to fall from the horse resulting in her injuries. The Defendants were allowed to implead and file a third party complaint against the Plaintiffs father, Carl J. Saccente, Jr. The Third Party Complaint alleges that as part of the consideration for providing riding lessons to Courtney Saccente, Carl J. Saccente, Jr., ("Saccente"), agreed to indemnify and hold harmless the Defendants from any and all loss by reason of liability for damages because of bodily injuries arising from the use of horses, equipment or the facility and from any liability that they may incur arising out of the Plaintiffs claim in this action.
Before the court is the Third-Party Defendant's, Carl Saccente, Jr.'s, motion for summary judgment in his favor and the Defendants', Third-Party Plaintiffs, motion for summary judgment requesting that summary judgment be entered against the Third-Party Defendant, Carl J. Saccente, Jr., as to liability only.
The standards for granting summary judgment are well settled. "`Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In CT Page 14600 deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party.' (Internal quotation marks omitted.) Elliott v. Waterbury, 245 Conn. 385, 391,715 A.2d 27 (1998). `The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact.' (Citation omitted; internal quotation marks omitted.)Rivera v. Double A Transportation, Inc., 248 Conn. 21, 24, 727 A.2d 204
(1999)." Segreto v. Bristol, 71 Conn. App. 844, 848 (2002).
The Third-Party Plaintiffs allege that Saccente assented to a hold harmless and indemnity agreement as well as an assumption of the risk and general release. In support of their claims they submit two documents: 1) "Agreement to Pay All Fees, Costs, Damages, etc. and to Self-Insure" and 2) "Assumption of Risk and General Release." The "Agreement to Pay All Fees, Costs, Damages, etc. and to Self-Insure" provides "I/we hereby agree to assume all responsibility and risk from my/our use of horsed (sic), equipment, premises and facilities, and further agree to indemnify and save harmless Emer Coyne, Sandra LaFlamme, any officers, agents, employees, or servants against any and all loss or expense, including legal fees and costs, by reasons of liability imposed by law upon Emer Coyne, Sandra LaFlamme, any officers, agents, employees or servants for damages because of bodily injuries, including death or because of property damage sustained, accidentally or otherwise, by any persons, including the understand (sic) arising out of or in consequence of the use of horses or equipment or the use of or presence on the premises, whether such injuries to persons or damage to property are due or claimed to be due to any negligence of Emer Coyne, Sandra LaFlamme, any officers, agents, employees, independent contractors or servants, or any other person." The "Assumption of Risk and General Release" provides: "I understand that riding horses can be a dangerous sport. I recognize the inherent risks of injury involved in riding programs, horse farm activities, horse shows, etc. I hereby assume all the risks and dangers and, further, I voluntarily release and will hold harmless Emer Coyne, Sandra LaFlamme, all agents, and employees from all actions, causes of actions, suits, and any and all claims, demands, and liabilities whatsoever, both in law and equity, which I may acquire against Emer Coyne, Sandra LaFlamme and/or any officers, agents, and employees in connection with any activity. I agree to indemnify and hold harmless Emer Coyne, Sandra LaFlamme, all officers, and agents on account of any such claim. The terms hereof shall be binding on my executors, heirs, administrator, and assigns, and shall serve as an assumption of risk and general release for all members of my family including my minor children CT Page 14601 and/or wards participating in any such activities." Both documents are signed by Courtney Saccente and Carl J. Saccente, Jr. In his affidavit attached to his Motion for Summary Judgment, Carl Saccente states that his daughter always wanted to take horseback riding lessons and because the Defendants would not have permitted her to do so unless he and Courtney signed the agreements, he and Courtney did sign the agreements.
The Third-Party Plaintiff argues that the agreements are enforceable against Saccente based on the decisions in Burkle v. Car TruckLeasing Co., 1 Conn. App. 54 (1983) and Laudano v. General Motors Corp.,34 Conn. Sup. 684 (1977). In Burkle the plaintiff sued to recover damages for injuries she sustained while operating an allegedly defective motor vehicle leased by her employer from the defendant. The lease provided that the "[l]essee agrees to indemnify and hold [l]essor harmless from any and all liability, loss, costs, damages and expenses including reasonable attorneys' fees caused by or arising from ownership, use, operation . . . of one or more automobiles leased hereunder." The court, relying on the decision in Laudano, found that the language covered even negligence by the lessor. In Laudano the court stated: "The language of the contract provision in this case clearly, unqualifiedly, and unequivocally states that the `Seller agrees to indemnify and protect Buyer against all liabilities, claims or demands . . . growing out of the performance of this contract. . . .' (Emphasis added.) There cannot be any broader classification than the word `all.' United States SteelCorporation v. Emerson-Comstock Co., 14] F. Supp. 143, 146 (N.D. Ill.). In `its ordinary and natural meaning, the word "all" leaves no room for exceptions.' Jacksonville Terminal Co. v. Railway Express Agency, Inc., supra, 261. The plain meaning of the words employed in the contract fairly includes a promise to indemnify even the negligent indemnitee. There is no reason why more should be required to establish the unmistakable intent of the parties. Levine v. Shell Oil Co., 28 N.Y.2d 205,212. See also Capozziello v. Brasileiro, 443 F.2d 1155 (2d Cir.) (applying federal law); Robert Company Associates v. Pinkerton Laws Co., 120 Ga. App. 29; Fosson v. Ashland Oil RefiningCo., 309 S.W.2d 176 (Ky.); Jennings v. Ralston Purina Co., 201 So.2d 168
(La.App.); St. Paul Mercury Indemnity Co. v. Kopp, 70 Ohio L. Abs. 259 (App.)." Laudano v. General Motors Corporation, 34 Conn. Sup. 684, 689
(1977). Here the "Agreement to Pay All Fees, Costs, Damages, etc. and to Self-Insure" provides that Saccente agrees to indemnify and save harmless the Defendants "against any and all loss or expense, including legal fees and costs, by reasons of liability imposed by law upon Emer Coyne, Sandra LaFlamme, any officers, agents, employees or servants for damages." The "Assumption of Risk and General Release" provides that Saccente releases and holds the Defendants harmless "from all actions, causes of actions, suits, and any and all claims, demands, and liabilities whatsoever, both CT Page 14602 in law and equity, which I may acquire against Emer Coyne, Sandra LaFlamme and/or any officers, agents, and employees in connection with any activity." This language clearly meets the standard set forth inBurkle and Laudano.
Recently in B D Associates, Inc. v. Russell, 73 Conn. App. 66, 72
(2002), the Appellate Court noted that exculpatory contracts which relieve a person from his own negligence are not favored but have been upheld where it appears in the language of the contract "plainly and precisely that the limitation of liability extends to negligence or other fault of the party attempting to shed his ordinary responsibility." Here the language of the "Agreement to Pay All Fees, Costs, Damages, etc. and to Self-Insure" refers to the assumption of responsibility for and agreement to indemnity and save harmless the Defendants from damages "arising out of or in consequence of the use of horses or equipment or the use of or presence on the premises, whether such injuries to persons or damage to property are due or claimed to be due to any negligence of Emer Coyne, Sandra LaFlamme, any officers, agents, employees, independent contractors or servants, or any other person." The language of the agreement explicitly includes damages resulting from the Defendants' own negligence, thus meeting even the more strident standard set forth in B D Associates, Inc. The language of the agreements are clear, and, in fact, specifically cite two of the named Defendants and provide that the Third-Party Defendant will indemnity and save them harmless even from their own negligence. Therefore the agreements are enforceable against the Third-Party Defendant.
Saccente argues that the agreements are unenforceable since they violate public policy. In Fischer v. Rivest, judicial district of Hartford at New Britain, Docket No. CV 000509627, (August 12, 2002), the court recently reviewed the law regarding enforcement of exculpatory contracts such as waiver and release agreements used in the context of voluntary sport activities. The court held that the waiver and release form there, involving the minor child's participation in an ice hockey game and which released the Defendants from their own negligence, was enforceable and not against public policy. The court cited the decision in Tunkl v. Regents of University of California, 60 Cal.2d 92,32 Cal.Rptr. 33, 383 P.3d 441 (1963), "where the California Supreme Court held that public policy prevented the enforcement of exculpatory contracts for services provided in the public interest, such as the hospital services provided to the plaintiff. The Court invalidated an exculpatory contract which the hospital required the plaintiff to sign before providing medical services, and set forth six factors to consider in determining whether or not an exculpatory contract violates public policy. The six factors are (1) does the release concern an activity CT Page 14603 generally thought suitable for public regulation; (2) is the party seeking exculpation engaged in performing a service of great importance to the public; (3) is the service open to any member of the public; (4) is the nature of the service essential; (5) does the party seeking exculpation have superior bargaining power, raising the issue of whether or not the release constitutes an adhesion contract; and (6) does the release place one party under the control of the other." Considering these factors the release at issue here is not against public policy: 1) it concerns horseback riding lessons which have not been generally the subject of public regulation; 2) the Defendants, in providing horseback riding lessons are not engaged in a service of great importance to the public; 3) although the service is open to the public, it is only available to those members of the public who can afford the cost; 4) the service provided is not essential; 5) the Defendants do not have superior bargaining power since the Plaintiffs could have gone to other horse farms for lessons which might not have required the execution of such a release; 6) the release does not place the Plaintiffs under the control of the Defendants because they could have discontinued the lessons at any time. As the court in Rivest noted, citing a quote from Tunkl: "[N]o public policy opposes private, voluntary transactions in which one party, for consideration, agrees to shoulder a risk which the law would otherwise have placed upon the other party . . ."
In his Motion for Summary Judgment, the Third-Party Defendant also argues that the agreements are contrary to the provisions of General Statutes § 52-557p and therefore void against public policy. General Statutes § 52-557p provides that: "Each person engaged in recreational equestrian activities shall assume the risk and legal responsibility for any injury to his person or property arising out of the hazards inherent in equestrian sports, unless the injury was proximately caused by the negligence of the person providing the horse or horses to the individual engaged in recreational equestrian activities or the failure to guard or warn against a dangerous condition, use, structure or activity by the person providing the horse or horses or his agents or employees." This statute simply allows for the use of the defense of assumption of the risk in actions based on the inherent risks of equestrian activities. It does not make the provider of the horse absolutely liable for his negligence in providing either the horse or equipment or facilities used in such activities. It simply preserves the right of an injured party to sue the provider based on his negligence. It also does not establish that it is against public policy for a provider to require the waiver of any right to sue him for negligence before allowing a person to engage in equestrian activities. The legislative history of the statute indicates that it was simply designed to protect the owners and operators of horse farms from claims which arise from the CT Page 14604 unavoidable risks inherent in equestrian activities. 36 S. Proc., Pt. 10, 1993, Sess. p. 139, remarks of Senator Jepsen. In Burkle the plaintiff also argued that the lease provision providing for indemnification by the lessee was void against public policy. The court rejected this claim stating that: "The intervening plaintiff also argues that the provision in question is void as against public policy in that it jeopardizes the safety of the public, citing General Statutes 52-572kfn2 as authority. Rather than buttressing the argument of voidness on public policy grounds, the effect of this statute is just the opposite. The legislature, in specifically outlawing hold harmless agreements in the construction industry, showed an intention that such a practice not be deemed against public policy in other situations, for had the legislature intended to outlaw all such provisions as against public policy, it could have said so. See Connecticut State Board of Labor Relations v. Board ofEducation, 177 Conn. 68, 72, 411 A.2d 28 (1979); Busko v. DeFilippo,162 Conn. 462, 471, 294 A.2d 510 (1972)." (Footnote omitted.) Similarly, the provisions of General Statutes § 52-557p do not outlaw indemnification and hold harmless agreements in the context of equestrian sports.
The Third-Party Defendant also moves for summary judgment on the grounds that, as Courtney's father, he is immune from liability pursuant to the doctrine of parental immunity. In support of this claim he citesCrotta v. Home Depot, Inc., 249 Conn. 634 (1999). There the defendants attempted to assert against the parent of the minor plaintiff claims for apportionment of liability pursuant to statute and common-law claims for indemnification and contribution. The Court held that the doctrine of parental immunity precluded the defendants from asserting a statutory claim against the parent for apportionment of liability because the language of the apportionment statute explicitly provides for the apportionment of liability only among those parties from whom a plaintiff is entitled to recover damages, and the doctrine of parental immunity precluded the minor plaintiff from recovering from his parent. The Court also held that the defendants could not assert common-law claims for contribution and indemnification from the parent because a contribution and indemnification defendant must be liable to the plaintiff, and parental immunity barred the parent from being liable to the minor plaintiff. The situation here is clearly distinguishable from Crotta. Here the claims asserted against the minor Plaintiffs father by the Defendants are based on contract, not common law. In addition, the basis of their claims is not any liability the father may have to the minor child Plaintiff but the liability the father may have directly to the Defendants arising out of his agreements to indemnify and save them harmless. Thus the doctrine of parental immunity does not preclude the claims of the Defendants, the Third-Party Plaintiffs, against Saccente. CT Page 14605
In conclusion, the Third-Party Defendant's, Carl Saccente, Jr.'s, motion for summary judgment is denied and the Defendants', Third-Party Plaintiffs, motion for summary judgment requesting that summary judgment be entered against the Third-Party Defendant, Carl J. Saccente, Jr., as to liability only, is granted.
___________________, J. Jane S. Scholl CT Page 14606