## ANNA M. CIMOCHOWSKI *v.* HARTFORD PUBLIC SCHOOLS ET AL.
### (SC 16578)

Sullivan, C. J., and Borden, Katz, Vertefeuille and Zarella, Js.

Argued April 16—officially released August 13, 2002

*Leon M. Rosenblatt*, for the appellant (plaintiff).

*Ann F. Bird*, assistant corporation counsel, for the appellees (defendants).

*Patrice McCarthy* filed a brief for the Connecticut Association of Boards of Education as amicus curiae.

*Opinion*

SULLIVAN, C. J. The dispositive issue in this case, which comes to us on certification from the United States District Court for the District of Connecticut pursuant to General Statutes § 51-199b (d),[1] is: "Was the plaintiff, who was Assistant Superintendent of Schools in the Hartford Public Schools, and who had been a certified professional employee employed for more than ninety days in a position requiring a certificate issued by the State Board of Education, a 'teacher,' as that term is used in the Teacher Tenure Act [act], [General Statutes §] 10-151?"[2] We answer the certified question in the affirmative.

The plaintiff, Anna M. Cimochowski, was assistant superintendent for support programs/services in the Hartford public school system. On May 14, 1999, she was terminated from her position. After her termination, she filed a three count amended complaint in the District Court against the named defendant, the Hartford public schools; the city of Hartford; the state board of trustees for the Hartford public schools; the former interim superintendent of schools, Matthew Borrelli; and the current superintendent, Anthony Amato. The

[1] General Statutes § 51-199b, the Uniform Certification of Questions of Law Act, provides in relevant part: "(d) The Supreme Court may answer a question of law certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court and if there is no controlling appellate decision, constitutional provision or statute of this state. . . ."

[2] General Statutes § 10-151 is commonly known as the teacher tenure act. *Murphy* v. *Young*, 44 Conn. App. 677, 678 n.1, 692 A.2d 403 (1997). General Statutes § 10-151 (a) (2) provides: "The term 'teacher' shall include each certified professional employee below the rank of superintendent employed by a board of education for at least ninety days in a position requiring a certificate issued by the State Board of Education . . . ." The act provides procedural protections for those designated as teachers under the act in the event they are terminated from their positions. See General Statutes § 10-151 (c) and (d) (pertaining to nontenured teachers and tenured teachers respectively).

complaint alleged, inter alia,[3] a violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983 (civil rights act), based on her claimed status as a teacher under the act. The plaintiff subsequently moved for partial summary judgment with respect to this claim, contending that, as a tenured teacher under the act, she had a property right in her employment.[4] The defendants also filed a motion for summary judgment, claiming that the plaintiff was not a teacher under the act and that, therefore, the act does not afford the plaintiff a property right in her job. Accordingly, the defendants contend that her termination did not violate the civil rights act. The District Court certified to this court the stated question of law to this court, which this court accepted.

The District Court's certification order set forth the following relevant facts. "The plaintiff, Anna M. Cimochowski, Ph.D., went to work for the Hartford Public Schools in 1966.[5] She was appointed Acting Assistant Superintendent for Support Programs/Services by the

[3] The plaintiff also alleged, in counts two and three, discrimination on the basis of sex, race and national origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (1994), and discrimination on the basis of age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (1994).

[4] It is undisputed that a teacher with tenure under the act has a property right in her employment. "A teacher who is given by statute the right to continued employment except upon a showing of cause or the bona fide elimination of his position; see General Statutes § 10-151 [d]; acquires a property right that is entitled to protection under the due process clause." *Lee* v. *Board of Education*, 181 Conn. 69, 72, 434 A.2d 333 (1980), on appeal after remand sub nom. *Halpern* v. *Board of Education*, 231 Conn. 308, 649 A.2d 531 (1994). Failure to provide a teacher with the process outlined in the act; General Statutes § 10-151 (d); amounts to a denial of due process. *Lee* v. *Board of Education*, supra, 79 (due process requires that following hearing on dismissal, board of education inform discharged teacher of reasons for its decision and evidence upon which it relied).

[5] The plaintiff conceded at oral argument before this court that the fact that she was employed in various capacities by the Hartford public school system prior to becoming the acting assistant superintendent for support programs/services is irrelevant to the question of whether an assistant superintendent falls within the definition of teacher under the act.

State Board of Trustees for the Hartford Public Schools on October 14, 1997. On January 8, 1998, she was appointed Assistant Superintendent for Support Programs/Services by the State Board of Trustees[6] for the Hartford Public Schools.[7]

"The Hartford Superintendent of Schools is the chief executive officer of the Hartford Public Schools. The Assistant Superintendent is responsible for certain components of the system, and reports to the Superintendent of Schools. The Hartford Superintendent of Schools supervises the Assistant Superintendent. The posting for the position the plaintiff held stated that the occupant '[a]ssists the Superintendent in the exercise of line authority' and performs 'other duties and responsibilities as assigned by the Superintendent/Designee.'

"The contract in force between the plaintiff and the Hartford Public Schools required the plaintiff to 'perform duties as detailed in the job description under the direction of the Superintendent of Schools.'[8]

"The certification which the plaintiff held from the State Board of Education was the certification of 'Intermediate Administrator.' The certification which the

---

[6] Prior to 1997, the Hartford board of education administered the Hartford public schools. In 1997, the state determined that "the Hartford school district [was] in a state of crisis" and enacted No. 97-4 of the 1997 Special Acts, which dissolved the Hartford board of education and installed a board of trustees to administer the Hartford public schools. Special Acts 1997, No. 97-4, § 1.

[7] From the time the plaintiff was promoted to acting assistant superintendent for support programs/services until the time she was terminated, there were three superintendents for the Hartford public school systems: Patricia Daniel (March, 1997–August, 1998); Matthew Borrelli (interim superintendent, August, 1998–April, 1999); and Anthony Amato (April, 1999–present).

[8] In December, 1998, the plaintiff entered into an employment contract with the Hartford public schools. The contract is not relevant to the question of whether an assistant superintendent is a teacher, as defined by § 10-151 (a) (2), apart from the job description contained within the contract.

Hartford Superintendent of Schools holds is the certification of 'School Superintendent.'[9]

"On May 14, 1999, the plaintiff was terminated from her employment with the Hartford Public Schools without being afforded the procedures contained in the [act], [General Statutes §] 10-151. "[10]

---

[9] Section 10-145d-572 (a) of the Regulations of Connecticut State Agencies provides in relevant part that an "Intermediate Administration or Supervision" certificate is "required for a person employed by a board of education who is designated by the employing agent or board of education as: deputy superintendent, *assistant superintendent*, principal, assistant principal, curriculum coordinator, supervisor of instruction or any person who has the primary responsibility for directing or coordinating or managing certified staff and resources, or any person responsible for summative evaluation of certified staff. . . ." (Emphasis added.)

Section 10-145d-582 of the Regulations of Connecticut State Agencies provides that a "Superintendent of Schools" certificate is "required for anyone employed by a board of education as a superintendent of schools or an executive director of a regional educational service center."

The superintendent of schools certificate is a prerequisite for the position of school superintendent. The intermediate administration or supervision certificate is a prerequisite for the position of assistant superintendent. Although an individual holding a superintendent of schools certificate *could* hold the position of assistant superintendent; see Regs., Conn. State Agencies § 10-145d-583 ("[t]his certificate shall authorize the holder to serve as a superintendent of schools, as deputy superintendent, assistant superintendent or as an executive director of a regional educational service center"); an individual employed as an assistant superintendent of schools need attain only the intermediate administration or supervision level of certification. Moreover, an assistant superintendent who holds a superintendent of schools certificate is not covered by General Statutes § 10-157 (a), which specifies that a school superintendent has "executive authority over the school system and the responsibility for its supervision," provides that a superintendent is elected by the school board, and further provides that, "[u]pon election and notification of employment or reemployment, the superintendent may request and the board shall provide a written contract of employment which shall include, but not be limited to, the salary, employment benefits and term of office of such superintendent. . . ."

[10] Section 10-151 (d) provides that a tenured teacher shall not be terminated except for an enumerated list of reasons, including, for example, moral misconduct. Prior to termination of employment, the superintendent must provide the teacher with written notice and, upon timely request, must provide the teacher with a "statement in writing of the reasons therefor. . . ." General Statutes § 10-151 (d). Further, upon timely request, the board of education must provide the teacher with a hearing.

The plaintiff claims that the position of assistant superintendent falls within the definition of teacher under the act because the definition of teacher includes administrative positions below the rank of superintendent. See footnote 2 of this opinion. The plaintiff further contends that the plain and unambiguous language of the act extends protection to assistant superintendents and that the statutory scheme requires that assistant superintendents be covered by the act. Conversely, the defendants claim that the plaintiff, as an assistant superintendent, does not qualify as a teacher under the act because the position of assistant superintendent is a high-level management position, *equal* to the heightened rank of superintendent. We find the plaintiff's argument persuasive and the defendants' argument unpersuasive.

Whether or not an assistant superintendent falls within the definition of teacher as defined by § 10-151 (a) (2) is a question of statutory construction over which our review is plenary. *State* v. *Murray*, 254 Conn. 472, 487, 757 A.2d 578 (2000).

We begin our analysis with the language of the statute. Section 10-151 (a) (2) provides that "[t]he term 'teacher' shall include each certified professional employee below the rank of superintendent employed by a board of education for at least ninety days in a position requiring a certificate issued by the State Board of Education . . . ." Accordingly, an individual must satisfy three requirements to be considered a teacher under the act: (1) the employee must hold a position below the rank of superintendent; (2) the employee must be certified and employed by a board of education for at least ninety days; and (3) the employee must be employed in a position requiring a certificate issued by the state board of education. It is not disputed that the plaintiff has satisfied the second and third requirements. The sole issue that we must decide, therefore,

is whether an assistant superintendent is "below the rank of superintendent . . . ." General Statutes § 10-151 (a) (2).

As a preliminary matter, we note that the plaintiff asserts, and the defendants do not dispute, that in general administrators are teachers for purposes of the act. The plaintiff points to *Delagorges* v. *Board of Education*, 176 Conn. 630, 410 A.2d 461 (1979), as support for the statement in her brief that "[s]chool administrators are covered by the . . . [a]ct, though they are administrators." See *Connecticut Education Assn.* v. *State Board of Labor Relations*, 5 Conn. App. 253, 270, 498 A.2d 102, cert. denied, 197 Conn. 814, 499 A.2d 804 (1985) (under *Delagorges*, administrators do not have tenure as administrators but *do* have tenure as teachers). Because we believe that the Appellate Court's interpretation of the act in *Connecticut Education Assn.* is an extension of this court's holding in *Delagorges*, and because the question of whether or not administrators are teachers for purposes of the act is central to the question of whether assistant superintendents are teachers, we begin with a preliminary examination of the holdings in *Delagorges* and *Connecticut Education Assn.*

In *Delagorges* we were asked to decide whether a principal and vice principal were "entitled to invoke § 10-151 (f) when they [were] terminated as administrators but retained as teachers."[11] Id., 634. We stated, alternatively, the question as, "have the plaintiffs, by virtue of their certification as administrators and their many years of administrative service, acquired tenure as administrators?" Id. We held that, when administrators are reassigned to classroom teaching positions

---

[11] Subsection (f) of § 10-151 has since been redesignated subsection (e) and gives aggrieved teachers the right of judicial appeal from a decision of a board of education.

rather than being fired outright, the act does not apply. Id., 634–37.

The facts of that case were as follows. Both plaintiffs, George Delagorges and George Richards, had been employed by the West Haven school system for over twenty years. Id., 632. Each became an administrator. Delagorges was an administrator for four years and an assistant principal for three years; Richards was an administrator for thirteen years and a principal for twelve years. Id. The defendant board of education undertook a study of the West Haven school system in which both plaintiffs had participated. As a result of the study, the positions of principal and vice principal were eliminated and several new administrative positions were substituted. Both plaintiffs applied for new positions under the reorganization, but neither was selected. They both subsequently were reassigned to teaching positions at a substantially reduced salary. Id. They protested the reassignment to the board of education and then sought judicial review. Id. The trial court concluded that it was without jurisdiction to hear the plaintiffs' appeal under the act. Id., 633.

On appeal to this court, the plaintiffs claimed that they had "tenure as administrators because they were employed for more than three continuous years under individual administrative contracts." Id., 634. We stated that the language of the statute "is sufficiently open-ended so that it might be read either to encompass or deny the plaintiffs' claim"; id., 635; and questioned "whether we should take this opportunity, in the absence of explicit legislative direction, to construe the . . . [a]ct to provide tenure for administrators not as teachers but as administrators." Id., 636. We concluded that the relevant case law "illustrate[d] the wisdom of restricting tenure to teachers until the legislature . . . instructs us to the contrary." (Citation omitted.) Id., 637. We also concluded, however, that the plaintiffs had

not been terminated for cause and, therefore, that the provisions of the act entitling terminated teachers to certain review procedures had not been triggered. Id., 637–38. Thus, it is unclear whether our holding in that case that the trial court did not have jurisdiction to hear the plaintiffs' appeals was based on our conclusion that administrators were not entitled to the statutory review procedures applicable to teachers or that those procedures simply had not been triggered.

In *Connecticut Education Assn.* v. *State Board of Labor Relations*, supra, 5 Conn. App. 269, the Appellate Court concurred with the conclusion of the state board of labor relations that "administrator unit members and teacher unit members are considered as one class of teachers for purposes of rights under the . . . act . . . ." In that case, the trial court was asked to issue a declaratory judgment on the validity of the construction of the act by the state board of labor relations (labor board). Id., 255. The labor board had issued the ruling in response to a petition by the Connecticut state council of AFSA, AFL-CIO, for a declaratory ruling on the question of "[w]hether under the [teacher negotiation act] and the . . . [a]ct, it is a mandatory subject of bargaining for the administrators' unit and/or the teachers' unit that members of an administrators' unit whose positions have been eliminated or whose positions have been lost to other administrators, may bump into or be assigned to a position in the teachers' unit, which position (i) is held by a Tenured teacher, (ii) is held by a non-Tenured teacher pursuant to [General Statutes §] 10-151 (b) or (iii) is unoccupied?" Id., 256. The labor board examined both the teacher negotiation act; General Statutes § 10-153a et seq.; and the act; General Statutes § 10-151; and "rendered an exhaustive and scholarly decision and declaratory ruling"; *Connecticut Education Assn.* v. *State Board of Labor Relations,*

supra, 260; answering the question in the affirmative. Id., 259.

The Appellate Court adopted "in toto . . . the answers promulgated by the labor board . . . ." Id., 276. The court began by noting the fact that "[c]ourts should accord great deference to the construction given the statute by the agency charged with its enforcement." (Internal quotation marks omitted.) Id., 266, quoting *Connecticut State Board of Labor Relations* v. *Board of Education*, 177 Conn. 68, 74, 411 A.2d 28 (1979). The court then set forth a thorough analysis of the labor board's ruling. *Connecticut Education Assn.* v. *State Board of Labor Relations*, supra, 5 Conn. App. 267–76. The court, in adopting the labor board's determination, did so on the basis of "the labor board's thoughtful analysis of the questions involved in the light of the history and intent of the pertinent statutes and its administrative expertise in this highly technical area." Id., 261.

Significantly, in *Connecticut Education Assn.*, the Appellate Court relied on a statutory provision not cited either by this court in *Delagorges* or by the labor board. It stated, "[a]ny lingering doubt that may be raised concerning the court's conclusion is dispelled by examination of General Statutes § 10-145d, not cited by the labor board or any parties to this case. This section concerns, in pertinent part, the adoption of state board regulations for teacher certificates and the adoption of regulations for school business administrators. Subsection (d) provides: 'Any individual certified as a school business administrator pursuant to regulations adopted by the state board in accordance with the provisions of subsection (b) of this section, shall not be deemed to be included in the definition of "teacher" in subdivision (2) of subsection (a) of section 10-151 solely by reason of such certification, provided any such individual who holds a regular teacher's certificate issued by the state

board of education and is employed as a teacher, princi-
pal, supervisor or school superintendent[12] shall not be
excluded from such definition.' This definition, not oth-
erwise related to the issues in this case, emphasizes
strongly the all important concept in the . . . [a]ct that
for its purposes a certified teacher remains a part of the
teacher class regardless of what other administrative
positions might be attained." Id., 270–71. The Appellate
Court concluded, and we agree, that this related legisla-
tion evidences the legislature's intent to include admin-
istrators within the definition of teacher for purposes
of the act. Id., 271. Accordingly, the court concurred in
the labor board's conclusion that the legislature clearly
intended that administrators have the same level of
employment security as classroom teachers. Id., 269.

The Appellate Court supported its determination by
citing to *Delagorges*, stating that its decision was "con-
sistent with *Delagorges* v. *Board of Education*, [supra,
176 Conn. 630]. In *Delagorges*, the court held that the
transfer of two high school administrators to classroom
positions was merely a reassignment which did not
entitle the administrators to judicial review of the board
of education's decision under the . . . [a]ct. The *Dela-
gorges* case did not involve bumping rights. Neverthe-
less, the court's conclusion that administrators did not
have tenure as administrators but only as teachers
firmly buttresses the conclusion we have reached."
*Connecticut Education Assn.* v. *State Board of Labor
Relations*, supra, 5 Conn. App. 270.

As we have noted, however, in *Delagorges* we did not
conclude that administrators have tenure as teachers;
rather, we concluded that, because the two plaintiffs
had not been terminated, the act did not apply. *Dela-*

[12] We note, as did the Appellate Court, that this provision pertaining to
school superintendents appears to conflict with the provisions of the act
exempting superintendents from the act. Because that question is not before
us in this case, we need not resolve that conflict here.

*gorges* v. *Board of Education,* supra, 176 Conn. 637–38. In *Delagorges,* we simply did not reach the question of whether the termination of an administrator triggered the review provision of the act. Although the conclusion in *Connecticut Education Assn.* is an extension of the *Delagorges* holding, we conclude, nevertheless, that it is not inconsistent with *Delagorges* and that it is consistent with the legislative policy evidenced by § 10-145d.

This conclusion is supported by an examination of the teacher evaluation act; General Statutes § 10-151c; which contains a definition of "teacher" substantially identical to that provided in the act. Section 10-151c provides in relevant part: "Any records maintained or kept on file by any local or regional board of education which are records of teacher performance and evaluation shall not be deemed to be public records and shall not be subject to the provisions of section 1-210 . . . ."[13] Section 10-151c defines the term teacher as "each certified professional employee below the rank of superintendent employed by a board of education in a position requiring a certificate issued by the State Board of Education." This court has recognized that, for purposes of § 10-151c, the term teacher includes administrators. See *Mendillo* v. *Board of Education,* 246 Conn. 456, 472–74, 717 A.2d 1177 (1998) (evaluation of principal could not be disseminated by superintendent without principal's consent pursuant to § 10-151c); *Rose* v. *Freedom of Information Commission,* 221 Conn. 217, 234, 602 A.2d 1019 (1992) (§ 10-151c applies to principal and assistant principal but does not protect against "the public disclosure of the substance of votes

---

[13] General Statutes § 1-210 (a) provides in relevant part: "Except as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records and every person shall have the right to inspect such records promptly during regular office or business hours or to receive a copy of such records in accordance with the provisions of section 1-212. . . ."

of a public agency that happen to concern matters of personnel, teacher performance or evaluation"); *Board of Education* v. *Freedom of Information Commission*, 210 Conn. 590, 595, 556 A.2d 592 (1989) (documents describing "goals and objectives" of school administrators protected from disclosure by § 10-151c). We find it significant that this court has interpreted a substantially identical definition of the term teacher within the same statutory scheme as the act to include school administrators.

In light of the labor board's construction of the act, the legislative intent to include administrators within the definition of teacher as set forth in § 10-145d, and this court's interpretation of the term teacher under § 10-151c, we conclude that the term teacher as defined by the act, includes administrators, and that terminated administrators are entitled to invoke the act's review procedures. Having established, as a preliminary matter, that administrators are teachers for purposes of the act, we now turn to the question of whether assistant superintendents are teachers under the act.

To answer this question, we apply the tools of statutory construction to the statutory scheme surrounding the act as it elucidates the legislative policy that the act was designed to implement. Section 10-151 is part of a larger statutory scheme of school laws, including the act, the teacher evaluation act; General Statutes § 10-151c; the teacher negotiation act; General Statutes § 10-153a et seq.; and statutes pertaining to the superintendents of schools. "The school laws enacted by the General Assembly demonstrate the adoption of a public policy to provide good public schools, staffed by qualified teachers; that these teachers, having proved their worth, shall be secure in their employment, save for circumstances affecting the quality of their work; and that, as an inducement to, and reward for, a long period of service, qualified teachers shall benefit from a com-

prehensive retirement system." *Herzig* v. *Board of Education*, 152 Conn. 144, 151, 204 A.2d 827 (1964).

A closer look at the legislative intent underlying the act reveals the legislative policy that the act was designed to implement, namely, protection of the employment security of employees of the educational system balanced with protection of the ability of boards of education to exercise discretion in implementing educational policy. "We are of course cognizant of the importance that has been attached by our legislature and by our cases to the protection of teachers in their professional role." *Delagorges* v. *Board of Education*, supra, 176 Conn. 636. This policy of protecting teachers is balanced, however, against the competing interest of boards of education in their ability to exercise "administrative discretion to determine and to implement educational policy. That discretion also has been recognized by our cases . . . . [J]udicial interposition into every reassignment of teaching or administrative personnel would carry substantial potential for administrative chaos." (Citations omitted.) Id.

The purpose of the precursor to the act enacted in 1917; Public Acts 1917, c. 316; was to increase efficiency in the hiring process and to enable rural school boards to attract better teachers.[14] This focus on aiding local

---

[14] See chapter 316 of the 1917 Public Acts, enacted May 16, 1917, codified as General Statutes (1918 Rev.) § 901. The text of the statute, as enacted, provided: "Any school committee may authorize the supervising agent to employ teachers. Any school supervising agent not authorized to employ teachers shall nominate to the school committee teachers for each of the schools in their respective towns from which nominations teachers may be employed and such committee shall accept or reject such nominations within one month from the time made." General Statutes (1918 Rev.) § 901.

The purpose of the act was set forth by Senator Edward S. Boyd: "[T]he idea of the bill was that the first of May the supervisors should nominate . . . teachers for the schools for the next year. . . . [T]he town Committee should act upon them, and in this way we would be able to get . . . plans for the schools settled prior to the . . . close of the school year. Much confusion and loss of efficiency occurs in delaying until through the vacation. Many good teachers could be obtained at that time . . . and if we can get

boards of education shifted to a policy of protecting teachers with the enactment of certain amendments in 1941.[15] "The recorded legislative history suggests that the statute was primarily intended to provide judicial review for teachers dismissed for cause . . . ." (Citation omitted.) *Delagorges* v. *Board of Education,* supra, 176 Conn. 635–36. "[T]he clear legislative intent is that administration unit teachers are to have the same degree of employment security as teacher unit personnel including the right to bump in accordance with a layoff procedure; and . . . teachers, whether in the administrative unit or teacher unit, are to be treated equally as members of the same class . . . ." *Connecticut Education Assn.* v. *State Board of Labor Relations,* supra, 5 Conn. App. 269.

An examination of the statutes pertaining to superintendents further evidences the legislature's balancing of interests between employment security for employees of the educational system and the need of school boards to exercise discretion in implementing educational policy. General Statutes § 10-157 (a)[16] provides

some concerted action so as to be able to go to the normal schools before they are placed elsewhere, we in the rural school work could get better teachers, securing them under contract for the next year, and in that way be able to start our schools with efficient teachers in the fall. That was the main idea in introducing this bill." Conn. Joint Standing Committee Hearings, Education, 1917 Sess., p. 178.

[15] In 1941, the legislature added the language that is the basis for the act as it exists today: "The contract for employment of a teacher shall be renewed for the following school year unless such teacher has been notified prior to March first of that year that such contract will not be renewed." General Statutes (Sup. 1941) § 142f.

[16] General Statutes § 10-157 (a) provides in relevant part: "Any local or regional board of education shall provide for the supervision of the schools under its control by a superintendent who shall serve as the chief executive officer of the board. The superintendent shall have executive authority over the school system and the responsibility for its supervision. Employment of a superintendent shall be by election of the board of education. Except as provided in subsection (b) of this section, no person shall assume the duties and responsibilities of the superintendent until the board receives written confirmation from the Commissioner of Education that the person

in relevant part that "[u]pon election and notification of employment or reemployment, the superintendent may request and the board shall provide a written contract of employment which shall include, but not be limited to, the salary, employment benefits and term of office of such superintendent. . . ." The differing levels of protection provided to teachers and administrators under the act and to superintendents under § 10-157 evidences the legislature's intent to balance its desire to protect employment security for school employees with its desire to provide the administrative discretion that is necessary effectively to operate a school system. Teachers are provided with the most protection—they have a property right in their teaching position. *Lee* v. *Board of Education*, 181 Conn. 69, 72, 434 A.2d 333 (1980) ("[a] teacher who is given by statute the right to continued employment except upon a showing of cause or the bona fide elimination of his position; see General Statutes § 10-151 [d]; acquires a property right that is entitled to protection under the due process clause"), on appeal after remand sub nom. *Halpern* v. *Board of Education*, 231 Conn. 308, 649 A.2d 534 (1994). Administrators below the rank of superintendent are given slightly less protection—they have a property right in a teaching position, but they have no administrative tenure. See *Trotta* v. *Board of Education*, 32 Conn. App. 395, 397–98, 628 A.2d 1343, cert. denied, 227 Conn. 922, 632 A.2d 700 (1993). Finally, superintendents have

to be employed is properly certified. The commissioner shall inform any such board, in writing, of the proper certification or lack thereof of any such person within fourteen days after the name of such person is submitted to him pursuant to section 10-226. A majority vote of all members of the board shall be necessary to an election, and the board shall fix the salary of the superintendent and the term of office, which shall not exceed three years. . . . Such superintendent shall, at least three weeks before the annual town or regional school district meeting, submit to the board a full written report of the proceedings of such board and of the condition of the several schools during the school year preceding, with plans and suggestions for their improvement. . . ."

the least amount of explicit statutory protection, but they are still protected by their statutory right to an employment contract that sets out the terms of employment.

Our conclusion that assistant superintendents are below the rank of superintendent is, therefore, consistent with the policy underlying the school laws, namely, to provide all employees with some degree of employment security while, at the same time, providing room for the exercise of administrative discretion. Each certified employee of a board of education for more than ninety days holding a position that requires a certificate from the state board of education is protected from arbitrary discharge provided that he or she is below the rank of superintendent. That includes classroom teachers and administrators. Superintendents also are protected from arbitrary discharge through their statutory right to an employment contract. Were we to conclude that assistant superintendents are within the rank of superintendent, they would be wholly without protection from arbitrary discharge as they would be excluded from the protection afforded by the act and they also would not fall within the purview of § 10-157, which requires that boards of education enter into employment contracts with their superintendents.[17] That conclusion would undermine the legislative policy underlying the school laws.

The defendants contend, however, that public policy dictates that public school districts have discretion in removing assistant superintendents. We agree. We conclude, however, that our determination that assistant

---

[17] Assistant superintendents are not superintendents as the term is used in § 10-157: they are not elected by the board of education, they are not the chief executive officers of the school system, they are not evaluated by the board of education, they are not required to hold a superintendent certificate. They are thus not protected by § 10-157, which requires a board of education to enter into an employment contract with its *superintendent.*

superintendents are below the rank of superintendent and, thus, protected by the act will not unduly restrict the discretion of boards of education in removing assistant superintendents. This court previously has recognized that school administrators do not have administrative tenure. *Delagorges* v. *Board of Education,* supra, 176 Conn. 634–37. Rather, they have *teacher* tenure. *Trotta* v. *Board of Education,* supra, 32 Conn. App. 397–98. This affords assistant superintendents a level of protection commensurate with the amount of discretion needed by the boards of education. Indeed, the plaintiff in this case is not claiming that she had a right to the position of assistant superintendent; she merely claims the right to a job.

Moreover, an examination of the teacher negotiation act; General Statutes § 10-153a et seq.; which appears in the same part of the General Statutes as the act, reveals that, when the legislature has desired to exclude assistant superintendents from the scope of the school laws, it has done so explicitly. For example, General Statutes § 10-153b (b) explicitly excludes from the teacher negotiation act "[t]he superintendent of schools, *assistant superintendents,* certified professional employees who act for the board of education in negotiations with certified professional personnel or are directly responsible to the board of education for personnel relations or budget preparation, temporary substitutes and all noncertified employees of the board of education . . . ." (Emphasis added.) Prior to 1969, the teacher negotiation act used the same language as the act to define whom the statute covered, namely, all certificated employees employed by a board of education holding a position "below the rank of superintendent . . . ." General Statutes (Cum. Sup. 1967) § 10-153b (b).[18]

---

[18] In 1955, the legislature amended the act and added the following language: "For the purposes of this section, the term 'teacher' shall include all employees of a board of education, *below the rank of superintendent or*

In 1969, the legislature reorganized the teacher negotiation act, setting up separate bargaining units for teachers and administrators. In so doing, the legislature changed the language from "below the rank of superintendent" to the enumerated list in § 10-153b (b). Public Acts 1969, No. 811, § 2. Four years later, in 1973, the legislature revised the definition of teacher in the act, changing the from "below the rank of superintendent or supervising agent" to "below the rank of superintendent." Public Acts 1973, No. 73-456, § 1. Four years after removing assistant superintendents from the purview of the teacher negotiation act, the legislature amended the *same language* in the act but chose not explicitly to exclude assistant superintendents. This omission is persuasive evidence of the legislature's intent to include assistant superintendents within the purview of the act.

The defendants claim, however, that the exclusion of assistant superintendents from the teacher negotiation act evidences the legislature's intent that assistant superintendents fall within the rank of superintendents. We disagree. Were we to adopt the defendants' reasoning, we would have to conclude that all of the other positions listed in § 10-153b (b), namely, "certified professional employees who act for the board of education in negotiations with certified professional personnel or are directly responsible to the board of education for personnel relations or budget preparation, temporary substitutes and all noncertified employees of the board of education," would also join assistant superintendents and superintendents within the rank of superintendent. Such a result would be absurd.

Having examined the relationship between the act and related legislation, we next examine the relationship of the act to common-law principles governing

---

*supervising agent,* who hold a regular certificate issued by the state board of education." (Emphasis added.) General Statutes (Sup. 1955) § 938d (c).

wrongful discharge. This court recognized an action for wrongful discharge of an at-will employee in the seminal case of *Sheets* v. *Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 476, 427 A.2d 385 (1980) (created public policy exception limiting discretion to terminate at-will employees). "In interpreting this exception, we note our adherence to the principle that the public policy exception to the general rule allowing unfettered termination of an at-will employment relationship is a narrow one . . . ." (Internal quotation marks omitted.) *Burnham* v. *Karl & Gelb, P.C.*, 252 Conn. 153, 159, 745 A.2d 178 (2000). This narrow public policy exception allowing a common-law wrongful discharge action by an employee who can prove a demonstrably improper reason for dismissal is an attempt to "balance the competing interests of employer and employee." *Morris* v. *Hartford Courant Co.*, 200 Conn. 676, 679, 513 A.2d 66 (1986). "The employer is allowed, in ordinary circumstances, to make personnel decisions without fear of incurring civil liability. Employee job security, however, is protected against employer actions that contravene public policy." Id. Accordingly, the employee has the burden of proving a violation of *important* public policy. Id., 679 and n.2.

This is very limited protection in comparison to that afforded by the act. Teachers in Connecticut are *not* at-will employees because of an affirmative decision of the legislature. In enacting the act, the legislature evidenced an intent to protect classroom teachers and administrators below the rank of superintendent from the threat of arbitrary discharge. Such protection is not afforded to at-will employees who are only protected in situations where an important public policy has been violated. In addition, we note that superintendents are not at-will employees, but rather they have a statutory right to an employment contract. In affirmatively choosing to remove teachers, administrators and superinten-

dents from the realm of at-will employees, the legislature has made clear its intent that these people "shall be secure in their employment, save for circumstances affecting the quality of their work . . . ." *Herzig* v. *Board of Education*, supra, 152 Conn. 151. It would make little sense to read § 10-151 together with § 10-157 as protecting *everyone but* assistant superintendents, who would then be at-will employees subject to arbitrary discharge except in the narrowest of circumstances.

Finally, because both parties focused in their briefs and arguments on the plain meaning of the phrase "below the rank of superintendent," we turn to the common understanding of the phrase and conclude that that understanding bolsters our conclusion that assistant superintendents are below the rank of superintendent. The meaning of the phrase "below the rank of superintendent" necessarily turns on the meaning of the term rank as used in the statute. Rank is not explicitly defined in the text of § 10-151. "Where a statute does not define a term it is appropriate to look to the common understanding expressed in the law and in dictionaries." (Internal quotation marks omitted.) *State* v. *Vickers*, 260 Conn. 219, 224, 796 A.2d 502 (2002). "Words in a statute must be given their plain and ordinary meaning . . . unless the context indicates that a different meaning was intended." (Internal quotation marks omitted.) *Gelinas* v. *West Hartford*, 225 Conn. 575, 584, 626 A.2d 259 (1993); see also General Statutes § 1-1 (a) ("[i]n the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language").

"Rank" has been defined as "a relative standing or position . . . ." Merriam-Webster's Collegiate Dictionary (10th Ed.). Relative standing or position requires the comparison of two positions in relation to one another—assistant superintendent as compared to

superintendent. It is uncontested that the superintendent is the chief executive officer of a school system. An assistant superintendent, however, is responsible for only certain components of the system. Additionally, the word "assistant" modifies superintendent. An assistant is "a person who assists: HELPER . . . ." Merriam-Webster's Collegiate Dictionary (10th Ed.). The assistant superintendent's job is to *help* the superintendent. She depends on the superintendent to assign her tasks and to direct her in her work. It would be odd, indeed, were we to find that the supervisor and the assistant shared the same rank. Comparing the two positions in relation to one another supports the conclusion that an assistant superintendent is below the rank of superintendent.

The defendants claim in their brief, however, that the term rank "clearly conveys the concept of a category of more than one [person] or [thing]—in the plural—sharing a status or standing in a hierarchy . . . ." This, they contend, is consistent with the way "rank" is used by the military wherein each rank includes individuals of common status.[19] The defendants' military argument is unpersuasive. First, there is nothing in the statute to suggest that it was intended to incorporate the military lexicon. Second, although in certain instances it might apply, as in the rank of general officer including the various degrees of general officer; see Merriam-Webster's Collegiate Dictionary (10th Ed.); in other instances it does not apply, as in lieutenant general is below the rank of general. Finally, and most important, attributing the meaning of "rank" suggested by the defendants' military analogy would, as we have

---

[19] The defendants argue further that within each rank there may also be "subranks." So, for example, within the rank of general there are the subranks of lieutenant general, general, etc. The defendants provide us no support for this argument and it is a feat of linguistic gymnastics that we will not credit.

explained, leave an assistant superintendent, in effect as the only at-will employee in the teaching and administrative categories. This is inconsistent with the purpose of the act.

For the stated reasons, we conclude that assistant superintendents are teachers as that term is defined in the act, § 10-151 (a) (2).

The certified question is answered: Yes.

No costs will be taxed in this court to any party.

In this opinion the other justices concurred.