Mirabilio v. Regional School District 16

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2013

(Argued: April 10, 2014     Decided: July 30, 2014)

Docket No. 13-4156

- - - - - - - - - - - - - - - - - -x

CATHERINE A. MIRABILIO,

Plaintiff-Appellant,

- v.-

REGIONAL SCHOOL DISTRICT 16,

Defendant-Appellee.

- - - - - - - - - - - - - - - - - -x

Before:             JACOBS, CALABRESI, and LIVINGSTON, Circuit Judges.

Appeal from a judgment of the United States District Court for the District of Connecticut (Chatigny, J.), dismissing appellant Catherine Mirabilio's claims that she was entitled to notice and a hearing prior to the regional school board's

reduction of her teaching position to half-time. Because Mirabilio was not "terminated" under Connecticut law, she was not deprived of any due process right. We therefore affirm.

Judge CALABRESI dissents in a separate opinion.

MELANIE I. KOLEK, Connecticut Education Assocation, Hartford, CT, <u>for Appellant</u>.

NICOLE D. DORMAN, Rose Kallor LLP, Hartford, CT, <u>for Appellee</u>.

DENNIS JACOBS, <u>Circuit Judge</u>:

Catherine Mirabilio, a tenured culinary arts teacher, alleges that the regional school board failed to provide notice and a hearing before reducing her full-time position to half-time. She appeals from a judgment of the United States District Court for the District of Connecticut (Chatigny, <u>J.</u>), dismissing her claim that the school board thereby deprived her of her due process rights under the Fourteenth Amendment and violated Connecticut General Statute § 10-151. Because the reduction in hours and salary does not constitute a "termination" under Connecticut law, we conclude that Mirabilio was not entitled to notice or a hearing before the school board's decision.

# I

Mirabilio was employed by Connecticut Regional School District 16 ("board") as a full-time teacher. In May 2011, the superintendent of schools informed her by letter that, under the recently-adopted school district budget, her position had been reduced to half-time, "commencing with the 2011-2012 school year." Rather than contesting the board's decision by requesting an administrative hearing, Mirabilio filed a lawsuit in Connecticut Superior Court in September 2011, alleging that the board violated her due process and equal protection rights by failing to provide her with notice and a hearing prior to reducing her work hours. She sought full reinstatement to her former full-time position, reimbursement of lost salary and benefits, and other money damages.

The board removed the case to federal court and soon after filed a motion to dismiss for failure to sufficiently allege a constitutional or statutory violation or, in the alternative, for lack of subject matter jurisdiction. The board's motion was granted; the equal protection claim was dismissed with prejudice and the due process claim was dismissed without prejudice. Mirabilio's amended complaint, filed in October 2012, reasserted her due process claim, and the board again moved to dismiss on the same grounds as before. The district court

granted the motion and dismissed the complaint, holding that, under settled Connecticut law, (i) only a "termination" of a teaching position triggers a right to prior notice and a hearing, and (ii) reduction of hours from full-time to half-time did not constitute such a "termination." This appeal followed.

**II**

"We review de novo a district court's dismissal of a complaint pursuant to Rule 12(b)(6), construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). The complaint must plead "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), and "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." Id.

Connecticut law requires that, "[p]rior to terminating a [tenured teacher's employment] contract, the superintendent shall give the teacher concerned a

4

written notice that termination of such teacher's contract is under consideration" and the teacher must be given the opportunity to file "a written request for a hearing," which will be held shortly thereafter. Conn. Gen. Stat. § 10-151(d). "It is clear that section 10–151 . . . create[s] a protectable property interest." Zimmerman v. Bd. of Educ. of Town of Branford, 597 F.Supp. 72, 76 (D. Conn. 1984). Although "[t]he right to continued employment is a property right protected under the due process clause", see Sekor v. Bd. of Educ. of the Town of Ridgefield, 240 Conn. 119, 129 (1997) (citations and alterations omitted), "personnel decisions *short of termination* do not constitute a deprivation of a property interest" cognizable under the Fourteenth Amendment. Wargat v. Long, 590 F. Supp. 1213, 1215 (D. Conn. 1984) (emphasis added).

The Connecticut Supreme Court has consistently held that "[t]he administrative remedy provided in General Statutes § 10–151(d) does not apply to . . . plaintiffs whose positions were being eliminated but whose employment with the board continued." School Administrators Ass'n of New Haven v. Dow, 200 Conn. 376, 384 n.6 (1986) (citing Candelori v. Bd. of Educ. of the City of New Britain, 180 Conn. 66, 69 (1980); Delagorges v. Bd. of Educ. of the Town & City of West Haven, 176 Conn. 630, 636–37 (1979). An employee reassigned to a lower-

paying position is not considered "terminated" for purposes of the statute even if the pay cut is "substantial." See, e.g., Candelori, 180 Conn. at 67-69 (new teaching positions resulting in substantially lower salary were not classified as terminations).

The plain text of the statute supports this view. Section 10-151 defines "full-time employment," "[f]or the purposes of this section," as "a teacher's employment in a position at a salary rate of fifty per cent or more of the salary rate of such teacher in such position if such position were full-time." Conn. Gen. Stat. § 10-151(a). Since Mirabilio's salary was reduced by exactly 50 percent, her new position is still deemed "full-time employment" under the statute. Because she remains a "full-time" employee despite the reductions in time and salary, Mirabilio was not "terminated" and no due process right was triggered.

Mirabilio was therefore not deprived of her right to continued employment, and was not entitled to notice and a hearing before her hours and salary were reduced.

* * *

Our colleague, deploring "activism," dissents on the procedural issue of whether federal courts are obliged to certify questions of state law that have not

6

been answered "definitely" by the state's highest court (consigning competing values to a footnote). With respect, deciding this case is activity, not activism. The dissent is expressly agnostic as to the merits, but the answer that the dissent would seek by certification has already been given, as the following analysis demonstrates.

The dissent distinguishes Delagorges and Candelori on the sole ground that the plaintiffs were administrators, not teachers. However, the Connecticut Supreme Court has clarified that the decisive point in those cases was that the plaintiffs remained employed notwithstanding the substantial pay reduction. See Cimochowski v. Hartford Pub. Sch., 261 Conn. 287, 293-94 (2002) ("We held [in Delagorges] that, when administrators are reassigned to classroom teaching positions rather than being fired outright, the [Teacher Tenure Act] does not apply."); id. at 297 ("[I]n Delagorges . . . we concluded that, because the two plaintiffs had not been terminated, the [Teacher Tenure Act] did not apply."); see also Conn. Educ. Ass'n v. State Bd. of Labor Relations, 498 A.2d 102, 111 (Conn. App. 1985) ("In Delagorges, the court held that the transfer of two high school administrators to classroom positions was merely a reassignment which did not entitle the administrators to judicial review of the board of education's decision

under the Teacher Tenure Act.").

The dissent relies on Cimochowski's observation that administrators and teachers have "differing levels of protection." 216 Conn. at 302. But this distinction has no bearing on whether reassignment constitutes a termination. The very passage quoted by the dissent explains that administrators also enjoy a property right in a teaching position. And (citing Delagorges) Cimochowski observes that "[j]udicial interposition into every reassignment of *teaching or administrative* personnel would carry substantial potential for administrative chaos." Id. at 300 (emphasis added). Cimochowski's conclusion that not all reassignments of teachers or administrators constitute a "termination" under the Teacher Tenure Act follows plainly from the statutory text, which limits the reassignments that constitute termination to those that reduce a teacher's salary below fifty percent of the current salary. See Conn. Gen. Stat. § 10-151(a).

Thus Cimochowski (i) holds that administrators and teachers alike are covered by the Teacher Tenure Act, and (ii) emphasizes that its holding is fully consistent with Delagorges. There is no reason to ask the Connecticut Supreme Court whether it meant what it said in Cimochowski. Why push on an open door?

The judgment of the district court is affirmed.

Calabresi, *Circuit Judge*, dissenting:

I would certify this case to the Connecticut Supreme Court, and I write to record my strong dissent from our failure to do so.

Judicial activism comes in many forms. One of the most unjustified is when a federal court, for no good reason, reaches out and answers an undetermined question of state law.[1] Doing this, rather than certifying the question to the state's highest court, impedes the state from determining the course of its own law, and subjects the parties to a decision that may be wrong and cannot subsequently be corrected even if later the state has an opportunity to make its law clear.[2] This is especially unfortunate when the party against whom

---

[1]     Good reasons for not certifying even a relatively open issue to a state court do, of course, exist. Among them are the "age and urgency of the litigation in which the issue is presented as well as the potential prejudice to the litigants that may result from the costs and delays associated with certification," especially when one may doubt the "likelihood that a decision on the certified question could be obtained expeditiously from the state supreme court." *L. Cohen & Co., Inc. v. Dun & Bradstreet, Inc.*, 629 F. Supp. 1419, 1424 (D. Conn. 1986); *see also Friends of Van Cortlandt Park v. City of New York*, 232 F.3d 324, 326 (2d Cir. 2000) (considering "the risk that certification might incur delay").

[2]     I confronted this very phenomenon shortly after taking the bench. In *DeWeerth v. Baldinger*, 836 F.2d 103 (2d Cir. 1987), our Court had, in interpreting New York law, imposed a duty of reasonable diligence on the owners of stolen artwork for statute of limitations purposes. The New York Court of Appeals later found this to be an incorrect interpretation of the state's law and declined to

1

the federal court rules had sought a judgment in state court, presumably because that party believed state law to be in her favor; the other party had exercised its right to remove the case to federal court; and the party seeking a state law ruling followed this with a request for certification. These are precisely the circumstances in the case before us.

The appellant, Catherine Mirabilio, is a tenured Connecticut teacher, and since she has a property interest in her tenured position, Connecticut law requires that she receive notice before her "contract" is "terminated." Conn. Gen. Stat. § 10-451(d). The question in this case is whether Mirabilio's contract had indeed been terminated so that notice was due to her. The issue in the cases on which the majority relies was, instead, whether *administrators*, who, unlike Mirabilio, do not have tenure in their jobs as administrators, were terminated

---

impose such a duty. *See Solomon R. Guggenheim Found. v. Lubell*, 77 N.Y.2d 311, 318 (1991). In light of the New York decision, the party against whom we had ruled in *DeWeerth* brought a motion before us to recall our mandate and vacate the judgment. Since we concluded that we lacked the authority to do so because the district court had resumed jurisdiction, we denied the motion without opinion on May 17, 1991. And when the district court found that relief was due to the party we ruled against pursuant to Federal Rules of Civil Procedure 60(b)(5) and (6), we reversed it, finding that awarding relief was beyond its discretion. *See DeWeerth v. Baldinger*, 38 F.3d 1266 (2d Cir. 1994). In short, our error in interpreting New York law was one we were unable to remedy.

2

within the meaning of the statute when they were reassigned back to teaching positions.

The reasoning in those cases is straightforward: because the administrators did not have a protectable *property interest* in their non-tenured administrative positions, they were not due notice upon being reassigned to teaching positions and, as a result, fell outside the statute's scope. *See Delagorges v. Bd. of Educ. of Town & City of W. Haven*, 176 Conn. 630, 636 (1979) (declining to stretch the statutory protections to "provide tenure for administrators not as teachers but as administrators"); *Candelori v. Bd. of Educ. of City of New Britain*, 180 Conn. 66, 69-70 (1980) (holding that administrators reassigned to teaching positions were "not afforded the protection" of the statute, which was reserved for tenured teachers).

The majority, however, reads those cases more broadly for the proposition that any "employee" who is reassigned to a lower-paying position does not have her previous contract "terminated," thereby eliding the distinction between teachers and administrators. *See ante* at 6. The fact remains, though, that the Connecticut Supreme Court has not, under this statute, confronted any case involving a tenured *teacher* such as Mirabilio, with a protectable property interest

3

in her position, who had a particular contract one day and the next was given another slashing her work and pay in half. Accordingly, Connecticut has not decided whether such an action constitutes a "termination" of Mirabilio's previous "contract" under the statute.

The majority decides that question on its own. Let me be clear: the majority may well be right. It is quite possible that the statute does not cover Mirabilio. This may even be a desirable reading of the statute. But it is by no means inevitable. Whether it is right or even desirable is for Connecticut to say, not New York-based or even Connecticut-based federal judges.

The majority's strongest authority for its position that Connecticut law is clear that contract termination does not occur for those who, though reduced in position, remain "employ[ed] with the board" comes from a passing remark in a footnote in a Connecticut Supreme Court decision dealing, once again, with administrators. *School Adm'rs Ass'n of New Haven v. Dow*, 200 Conn. 376, 385 n.6 (1986). And there is undoubtedly Connecticut authority leaning in the other direction. *See Tucker v. Bd. of Educ. of Town of Norfolk*, 4. Conn. App. 87, 93 (1985) (noting that a substantial reduction in employment "has more of the effect of a termination"); *Garavoy v. Bd. of Educ. of Regional School Dist. No. 1*, 178

4

Conn. 618, 620 (1979) (where a school board provided notice under the statute to a teacher whose "one day per week" position was eliminated even though the "other four days" of the week he remained employed by the board).

In reply to my dissent, the majority cites and relies heavily on *Cimochowski v. Hartford Pub. Schs.*, 261 Conn. 287, 293-94 (2002). That case, of course, contains the language cited by the majority. But here is what else *Cimochowski* says:

> The differing levels of protection provided to teachers and administrators under the act . . . evidences the legislature's intent to balance its desire to protect employment security for school employees with its desire to provide the administrative discretion that is necessary effectively to operate a school system. *Teachers are provided with the most protection—they have a property right in their teaching position.* Administrators . . . are given slightly less protection—they have a property right *in a teaching position*, but they have no administrative tenure.

*Id.* at 302-303 (emphasis added) (citations and internal quotation marks omitted).

The language in *Cimochowski* that the majority relies on is clearly given in the context of a case involving administrators, and, given that context, in fact supports my point that, since teachers are different, the Connecticut

5

Supreme Court might well read the statute differently as to them. Moreover, *Cimochowski*, in the portions cited by the majority, is speaking only of reassignment or transfer, *see id.* at 297, and not of a cutting of salary and hours in half. The latter could well be seen by the Connecticut Supreme Court to constitute a termination of one's contract, followed by the providing of a new, and substantially different, level and contract of employment.

The majority is especially misguided when it argues that the statute's definition of "full-time" work, Conn. Gen. Stat. § 10-151(a)(4), means (a) that Mirabilio's new and old positions both constitute full-time employment and (b) that she therefore could not have experienced a contract termination. *See ante* at 6. First, the provision to which the majority refers defines full-time work for the altogether different purpose of calculating tenure accrual, and this definition may well not be deemed relevant by Connecticut courts for our present purpose, which is to determine how much of a position reduction a teacher needs to face to have had her contract terminated. Second, whether or not Mirabilio is, in some regard, still a "full-time" employee after the reductions may simply be immaterial. A perfectly plausible interpretation of the statutory text is that all that matters to give rise to the statute's protection is that one "contract" is

6

"terminated" whenever it is replaced by another giving substantially fewer hours and less pay, *even if* both contracts are full-time.

Despite the majority's insistence that the distinctions (a) between teachers and administrators, (b) between reassignment and having one's job cut in half, and (c) between what "full time" means for the wholly distinct purposes of tenure accrual and deciding whether a contract has been terminated, are meaningless, I remain unconvinced. I fear the door the majority speaks of is anything but open, and if I am wrong, I would rather hear that from Connecticut itself.

In light of the facts that neither the text of the Connecticut statute nor Connecticut's precedents answer definitely whether Mirabilio was due notice; the issue is important to the parties, and to all teachers and school boards in Connecticut; and certification would definitively resolve the issue before us, this case should be certified. *See, e.g., Georgitsi Realty, LLC v. Penn–Star Ins. Co.,* 702 F.3d 152, 158 (2d Cir. 2012) (outlining certification factors).

More generally, there are many sound reasons for allowing Connecticut to make its own law in this case. If Connecticut law is indeed as the majority believes it to be, then a holding by the Connecticut Supreme Court

7

saying so, after certification, will determine the issue for good and all. In contrast, a decision by our Court inevitably leaves the issue in doubt until such time as another case reaches the Connecticut Supreme Court and allows that Court to speak definitively on the issue. And this doubt can be increased by any intervening decisions of any lower Connecticut courts, as those courts are under no obligation whatever to follow our ruling. *See Sargent v. Columbia Forest Prods., Inc.*, 75 F.3d 86, 90 (2d Cir. 1996) (a state court is not bound by a federal court's interpretation of state law); *Quinones v. State Dep't of Corr.*, 14 Misc. 3d 390, 396, (N.Y. Sup. Ct. 2006) (while federal decisions "may be treated as useful and persuasive" in state courts, they are "not binding"). If, instead, the Connecticut Supreme Court disagrees with the majority's ruling, and, on certification, found that notice was due to Mirabilio, an unjust result will have been avoided. And when I say "unjust result," I am not speaking in an abstract philosophical sense, but in a totally practical one. The result is unjust because the losing party will have been denied the right given her by the constitutionally applicable law— Connecticut's.

Certification thus recognizes the fundamental role of the states in our federal system. Failure to certify in cases like this one not only deprives the

8

parties of a judgment under the properly applicable law, but also undermines one of the vital bases of our union. I cannot understand why, except for a desire to have one's own way with another jurisdiction's law, we should fail to certify and let Connecticut decide this case.[3]

Accordingly, I respectfully dissent.

---

[3] Of course, Connecticut might well decide that it wished not to take the case if we certified. And we can make such a decision more informed by indicating how we would decide the case if Connecticut declined certification. A reaction to such a certification "raisonné" becomes the equivalent of a state's highest court deciding whether or not to take an appeal from an intermediate appellate court in the state. Such a decision, of course, is perfectly proper, and can reflect all the reasons why that high court might or might not wish to rule on the issue at the time, including because it believes that the way we would decide the case, if it declined certification, was correct, and that the issue was already settled by Connecticut decisions.