**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-1032**

INTEGRATED DIRECT MARKETING, LLC,

Plaintiff – Appellant,

v.

DREW MAY; MERKLE, INC.,

Defendants – Appellees.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Leonie M. Brinkema, District Judge. (1:14-cv-01183-LMB-IDD)

Argued: May 9, 2017                                   Decided: May 30, 2017

Before MOTZ, SHEDD, and DUNCAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Charlie Lee, MOORE & LEE, LLP, McLean, Virginia, for Appellant. Declan C. Leonard, BERENZWEIG LEONARD, LLP, McLean, Virginia; James Bennett Kinsel, PROTORAE LAW PLLC, Tysons Corner, Virginia, for Appellees. **ON BRIEF:** Kristen A. Bennett, MOORE & LEE, LLP, McLean, Virginia; Mark Pedroli, PEDROLI LAW, LLC, St. Louis, Missouri, for Appellant. Nicholas R. Johnson, BERENZWEIG LEONARD, LLP, McLean, Virginia, for Appellee Merkle, Inc. Rebecca B. Segal, Jennifer A. Lucey, PROTORAE LAW PLLC, Tysons Corner, Virginia, for Appellee Drew May.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Integrated Direct Marketing, LLC ("IDM") appeals the district court's grant of summary judgment to Drew May and Merkle, Inc. ("Merkle," collectively, "Defendants"), whom it accused of misappropriating trade secrets and breaching a confidentiality agreement. IDM also appeals the court's denial of its request for an adverse inference based on Defendants' alleged spoliation of evidence. For the following reasons, we affirm.

I.

IDM and Merkle are direct competitors in the data-driven marketing business, wherein companies source, manipulate, and maintain information on potential consumers and provide strategic marketing advice to their clients. IDM formerly employed May as Executive Vice President for Data Integration, and as a condition of employment, May executed a confidentiality agreement prohibiting his disclosure or unauthorized retention and use of IDM's confidential and proprietary information. IDM terminated May's employment, but immediately prior to his termination, May saved large quantities of IDM's electronic files to his personal hard drive. Subsequently, Merkle hired May to serve as a Vice President and Client Partner, engaging in duties similar to those he performed for IDM for some of the same clients. Based on an examination of the hard drive by IDM's forensic computer expert, IDM determined that May retained possession of many IDM files after his termination and that he later attempted to delete those files from his hard drive on four separate occasions.

3

In its complaint, IDM raised seven claims for relief. Relevant to this appeal are three claims: (1) breach of contract against May; (2) violations of the Arkansas Trade Secrets Act ("ATSA"), Ark. Stat. Ann. §§ 4-75-601 to -607, against May; and (3) violations of the ATSA and the North Carolina Trade Secrets Protection Act, N.C. Gen. Stat. §§ 66-152 to -162, against Merkle. With respect to the breach of contract claim, IDM alleged that May violated the confidentiality agreement by failing to return all of IDM's property upon his termination. Regarding the trade secret claims, IDM alleged that the Defendants misappropriated IDM trade secrets by using IDM's pricing information in connection with a proposal Merkle was preparing for Google, and by extracting knowledge from an IDM employee relating to techniques for using Alteryx, a commercially available software package.

After contentious discovery, May and Merkle moved for summary judgment. IDM opposed summary judgment and filed a Motion in Limine for an Adverse Inference for Defendants' Spoliation of Evidence and Other Relief. In this motion, IDM requested that the district court draw the inference that both May and Merkle misappropriated IDM trade secrets based on May's deletions of certain IDM files from his hard drive.

Ruling from the bench at the hearing on Defendants' summary judgment motions, the district court dismissed IDM's breach of contract claim against May for violation of the confidentiality agreement. As noted by the court, the confidentiality agreement's definition of "confidential information" was unlimited in scope, and it purported to restrict May in perpetuity, as it contained no time restrictions. Accordingly, because the

4

confidentiality provision was not narrowly tailored to protect IDM's legitimate business interests, the court ruled that it was unenforceable under the applicable law.

Subsequently, in a detailed opinion granting Defendants' motions for summary judgment, the district court addressed in turn each trade secret IDM identified as being misappropriated. First, the court considered IDM's claim that Merkle was able to underbid IDM for Google work because May disclosed IDM's pricing information to Merkle. *See* J.A. 3617–24. According to IDM, May's disclosure of its pricing information resulted in Google selecting Merkle for the work before IDM was able to submit its final proposal. The court found that IDM failed to present sufficient evidence as to what pricing it was considering using in its never-finalized proposal, and Merkle put forth substantial evidence that it did not obtain or use IDM pricing information in formulating its bid. Thus, the court dismissed IDM's trade secret misappropriation claims relating to the alleged disclosure of pricing information.

The district court next addressed IDM's claim that May orchestrated a telephone conference between Brian Wiedower, who was then IDM's Director of Data Integration, and a representative of Merkle, during which Wiedower allegedly disclosed IDM trade secrets relating to matching techniques used on the Alteryx platform. *See* J.A. 3624–27. IDM's main evidence in support of this claim was a declaration from Wiedower conclusively stating that he disclosed "IDM confidential and proprietary information" on the conference call. J.A. 3625–26. However, IDM did not produce the specific trade secret information that was allegedly misappropriated. Acknowledging that information relating to Alteryx is publicly available, the court concluded that IDM failed to proffer

5

enough evidence from which a reasonable jury could determine that the disclosed information meets the definition of a trade secret under the applicable law. Additionally, the court noted that IDM failed to cite any authority supporting its position that May should be liable for Wiedower's disclosure of trade secrets merely because he organized the telephone conference. Accordingly, the court dismissed IDM's trade secret misappropriation claims relating to Wiedower's telephone conference with Merkle.

Finally, the district court refused to adopt an adverse inference that Defendants misappropriated IDM trade secret information. During an evidentiary hearing, the district court judge personally questioned May under oath, and after evaluating May's in-person testimony, the court determined that there was insufficient evidence to support a finding of spoliation. Notably, the court did impose monetary sanctions for May's actions during the course of this litigation and specifically for his "lack of candor regarding his retention of IDM files." J.A. 3661.

## II.

IDM contends that the district court erred in granting summary judgment in favor of May and Merkle and in declining to impose a spoliation inference. We review the grant of summary judgment de novo, *Wilkins v. Montgomery*, 751 F.3d 214, 220 (4th Cir. 2014), and "the refusal to apply a spoliation inference must stand unless it was an abuse of the . . . court's broad discretion." *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 450 (4th Cir. 2004) (citation and internal quotation marks omitted).

Having reviewed the record and the applicable law, and having had the benefit of oral argument, we find that the district court committed no abuse of discretion in refusing

6

to impose a spoliation inference. Therefore, we affirm the grant of summary judgment based substantially on the reasoning of the district court.

*AFFIRMED*