[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] ARTICULATION OF DECISION DENYING MOTION FOR SUMMARY JUDGMENT
On February 18, 2003, the court denied the Motion for Summary Judgment filed by defendant Board of Education of the Town of Ledyard. This articulation explains the analysis that produced that decision.
 Allegations of the Complaint
On October 10, 2003, the plaintiff, Catherine Forgue, filed a complaint against the defendant, the board of education of the town of Ledyard, claiming wrongful constructive discharge. From September 1974 through June 2001, the plaintiff was employed as a special education teacher by the defendant at Ledyard Middle School. Until September 1999, the plaintiff received, through the defendant's agents, positive and praiseworthy job performance evaluations. In September of 1999, the defendant appointed Robert McCain as principal of Ledyard Middle School. From September 1999, through June 2001, the defendant, by and through McCain, intentionally created difficult and intolerable working conditions, thereby forcing the plaintiff to resign. The plaintiff alleges that McCain, among other things, intentionally undermined her teaching environment and control of her students' behavior by criticizing her in front of her students, and advising her students to actively disobey the plaintiff's instruction and efforts to discipline the students. McCain failed to take any action when a student assaulted other students and staff, and threatened the plaintiff. When the plaintiff informed the police of the incident after McCain's inaction, McCain accused the plaintiff of insubordination. McCain falsely accused the plaintiff of falsifying records, threatened to terminate her, and verbally attacked her in a vicious manner exclaiming that the plaintiff's professional misconduct needed to be rectified by the institution of an "action plan." On June 8, 2001, the plaintiff resigned.
 The Motion for Summary Judgment
CT Page 3818-b
The defendant filed a motion for summary judgment, with an accompanying memorandum of law in support, asserting four grounds: (1) the plaintiff cannot prevail on a common-law wrongful discharge claim because she has failed to exhaust the grievance procedures set forth in her collective bargaining agreement; (2) the plaintiff cannot prevail on a common-law wrongful discharge claim because she is an at-will employee; (3) the plaintiff cannot prevail on the common-law wrongful discharge claim because she failed to identify a public policy that was violated by her alleged discharge; and (4) the plaintiff cannot prevail on her common-law wrongful discharge claim because she had statutory remedies available to her. The plaintiff filed a legal memorandum in opposition to the Motion for Summary Judgment. Furthermore, the plaintiff has submitted her deposition, job performance evaluations and narratives, as well as the collective bargaining agreement[1] between her and the defendant.
 Standard of Review
Practice Book § 17-49 "provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a mater of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted.) Barrett v.Montesano, 269 Conn. 787, 791-92, 849 A.2d 839 (2004). However, "[a] motion for summary judgment that argues the court lacks subject matter jurisdiction because of a failure to exhaust administrative remedies should be treated as a motion to dismiss." Stallworth v. Waterford,
Superior Court, judicial district of New London, Docket No. CV 00 0555312 (March 20, 2003, Leuba, J.T.R.)
Because the defendant has raised the issue of exhaustion of administrative remedies which implicates the subject matter jurisdiction of the court, this memorandum of law will first review whether the court has jurisdiction over the present case.
 A Exhaustion of Grievance Procedures in a Collective Bargaining
CT Page 3818-c Agreement
The defendant argues the following. The plaintiff was a tenured teacher and a member of a collective bargaining unit. As such, the plaintiff was a beneficiary of a collective bargaining agreement established between the parties. The collective bargaining agreement set out formal grievance procedures[2] that culminated in arbitration before the American Arbitration Association. The defendant argues that the plaintiff did not avail herself of the grievance procedures set forth in the agreement to address the alleged intolerable conduct that the plaintiff claims compelled her to resign. The defendant argues that despite the existence of the grievance procedures, the plaintiff never filed a grievance, and therefore the court lacks jurisdiction over the plaintiff's common-law claim of wrongful discharge.[3]
The plaintiff in her memorandum of law admits that there is no dispute that she is bound by the collective bargaining agreement, but argues that neither the agreement nor the statute referenced therein requires her to exhaust her administrative remedies. The plaintiff does not dispute that she was a tenured teacher nor that she did not avail herself of the grievance procedures of the agreement. The plaintiff simply relies on the law to vindicate her arguments.
In Mendillo v. Board of Education, 246 Conn. 456, 717 A.2d 1177 (1998), our Supreme Court considered facts similar to the facts of the present case. In Mendillo, the plaintiff filed, inter alia, a claim for wrongful constructive discharge arising from the alleged acts of the superintendent of schools. The plaintiff alleged that the superintendent "engaged in a deliberate effort to harass and torment the plaintiff" thereby making continued employment with the defendant school board impossible. Id., 465. The plaintiff ultimately resigned. The Supreme Court considered whether the plaintiff was required "to exhaust the administrative procedures of [General Statutes] § 10-151(d) or the grievance procedures of the [collective bargaining] agreement before asserting [a wrongful constructive discharge] claim." Id., 464.
In discussing the doctrine of exhaustion, the Supreme Court inMendillo stated that "[t]he doctrine of exhaustion is grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency's findings and conclusions . . . The doctrine of exhaustion furthers the salutary goals of relieving the courts of the burden of deciding questions entrusted to an agency . . . in advance of possible judicial review." Id., 466-67. "Despite the important public policy considerations underlying the exhaustion requirement, we have grudgingly CT Page 3818-d carved several exceptions from the exhaustion doctrine . . . We have recognized such exceptions, however, only infrequently and only for narrowly defined purposes . . . One of the limited exceptions to the exhaustion rule arises when recourse to the administrative remedy would be demonstrably futile or inadequate . . . An administrative remedy is futile or inadequate if the agency is without the authority to grant the requested relief." (Citations omitted; internal quotation marks omitted.)Id., 467. The Supreme Court then held that the exception applied to the facts of the case because a termination hearing pursuant to § 10-151(d)[4]
is not designed to resolve a wrongful constructive discharge claim. Id., 468. "To require the plaintiff . . . to invoke the provisions of § 10-151(d) would be to attempt to force the proverbial square peg into a round hole. The dispute between the parties is not whether the plaintiff has engaged in any of the six potential grounds for termination. The defendants do not claim that she has. The dispute is whether she resigned voluntarily or was forced to do so by the wrongful conduct of [the defendant]. That kind of factual dispute simply does not fit within either the purpose or the language of § 10-151(d). The board of education would not have been empowered, under § 10-151(d), to determine whether a constructive discharge took place because that question is not one of the statutorily defined subjects of a hearing under the statute. Recourse to the administrative remedy of § 10-151(d) would, therefore, be futile because the board of education would have been without the authority to grant the relief requested by the plaintiff." Id., 469.
The Mendillo court then tried to envision what would transpire if the exhaustion doctrine were to be applied under § 10-151(d) in the factual context of that case. The Supreme Court determined that a hearing pursuant to § 10-151(d) would have been to resolve the issue of whether the defendant had constructively discharged the plaintiff or if the plaintiff had resigned. The hearing would not have involved any scrutiny of whether any of the six statutory grounds under § 10-151(d) had been proven. "[T]he hearing before the board of education would have borne neither substantive nor procedural resemblance to the kind of hearing contemplated by § 10-151(a)." Id., 470.
The Supreme Court in Mendillo further noted that, "assuming the plaintiff's allegations to be true, the defendants, by engaging in an intentionally harassing course of conduct that forced the plaintiff to submit her letter of resignation, also would have totally defaulted in their obligations under § 10-151(d). That is because by doing so the defendant would have wholly deprived the plaintiff of the procedural due process protections of her constitutionally protected substantive rights to her tenured teaching status." Id., 470-71. The court stated that CT Page 3818-e "[t]he same reasoning applies to the defendant's contention that the plaintiff also was required to exhaust the grievance and arbitration remedies provided by the agreement, because the agreement specifically links termination under the agreement to the provisions of the statute . . . This can only mean that at least insofar as the agreement covers the procedures for dismissal or termination of the contract of a school principal, such a termination must be effected pursuant to the provisions of § 10-151(d). Because, as we have just determined, there is no requirement that the plaintiff resort to the statutory administrative remedies provided by § 10-151(d) before seeking judicial intervention, a contractual provision that simply refers to the same statutory scheme cannot be regarded as requiring resort to other remedies as preconditions to judicial intervention. Therefore, by either route, the statute or the agreement, one arrives at the same destination." (Internal quotation marks omitted.) Id., 471-72.
Appendix A of the collective bargaining agreement provides, among other things, for a four-level[5] formal grievance procedure in which a teacher who has a complaint may formally bring a grievance before the principal of the school, the superintendent of schools, the board of education, or an impartial arbitrator, respectively. Appendix A states that "[n]o teacher will be disciplined, reprimanded or suspended without just cause." Nowhere in Appendix A, nor in any other section of the collective bargaining agreement, however, is termination or discharge of a teacher mentioned.
In section 20.1, the definitions section of the collective bargaining agreement, a "Teachers Long Term Contract" is defined as being "the contract issued each teacher in accordance with the provision of the Connecticut Tenure Act, Section 10-151 as amended." As discussed above, § 10-151(d) provides the grounds for which a tenured teacher's contract may be terminated. Even though the agreement contains an extensive grievance procedure by which the plaintiff could have availed herself to address grievances that she may have had with the defendant prior to the point in which her alleged constructive discharge was imminent, the grievance procedure is nevertheless inadequate to address the plaintiff's present claim of constructive discharge. Furthermore, the collective bargaining agreement expressly states that contracts issued to teachers are done so in accordance with General Statutes § 10-151. "This can only mean that at least insofar as the agreement covers the procedures for dismissal or termination of the contract of a school [teacher], such a termination must be effected pursuant to the provisions of § 10-151(d)."Mendillo v. Board of Education, supra, 246 Conn. 471. As stated inMendillo, "a contractual provision that simply refers to the same statutory scheme cannot be regarded as requiring resort to other remedies CT Page 3818-f as preconditions to judicial intervention." Id., 471-72.
In light of the facts and holding of Mendillo v. Board of Education,
the court finds that the plaintiff in the present case need not exhaust her administrative remedies before judicial intervention because a remedy sought pursuant to General Statutes § 10-151(d) or through her collective bargaining agreement would have been futile or inadequate. The remedies under § 10-151(d) or the grievance procedures of the collective bargaining agreement do not contemplate or provide for a resolution of a claim for constructive discharge; they simply are not what § 10-151(d) or the grievance procedures of the collective bargaining agreement are designed to resolve.
Consequently, the court finds that it has subject matter jurisdiction to review the plaintiff's claim for wrongful constructive discharge.
 B. Constructive Discharge Claim by a Tenured Teacher
The defendant further argues that the plaintiff may not bring a wrongful discharge claim because she is not an at-will employee, or, in the alternative, the plaintiff's wrongful discharge claim must fail because she has not identified a public policy that was violated by her wrongful discharge.
"Teachers in Connecticut are not at-will employees because of an affirmative decision of the legislature. In enacting the [Teacher Tenure Act, General Statutes § 10-151], the legislature evidenced an intent to protect classroom teachers and administrators below the rank of superintendent from the threat of arbitrary discharge. Such protection is not afforded to at-will employees who are only protected in situations where an important public policy has been violated . . . In affirmatively choosing to remove teachers, administrators and superintendents from the realm of at-will employees, the legislature has made clear its intent that these people shall be secure in their employment save for circumstances affecting the quality of their work . . ." (Internal quotation marks omitted.) Cimochowski v. Hartford Public Schools,261 Conn. 287, 306-07, 802 A.2d 800 (2002).
In Appleton v. Board of Education, 53 Conn.App. 252, 262, 730 A.2d 88
(1999), rev'd on other grounds, 254 Conn. 205, 757 A.2d 1059 (2000), the Appellate Court noted that a "tenured teacher cannot pursue a separate tort claim for wrongful discharge . . . [T]he right to recover in tort for wrongful discharge extends only to employees at will." (Citation CT Page 3818-g omitted.) The Appellate Court, however, noted that the tort of "wrongful discharge" was unavailable for tenured teachers, not that the tort for wrongful constructive discharge was unavailable. Although in Appleton,
the plaintiff was trying to interject a claim for wrongful constructive discharge through her affidavit, the court ultimately held that the plaintiff could not plead a claim through her affidavits, and "that the plaintiff's resignation was voluntary and there was no constructive discharge claim pleaded, [therefore], there is no genuine issue of material fact with regard to whether the plaintiff was terminated without cause . . ." Id., 263. The Appellate Court did not specifically address whether a tenured teacher could bring a claim for wrongful constructive discharge, nor did it discuss or try to reconcile its statement concerning wrongful discharge with the facts of Mendillo.
In the present case, the defendant relies on Appleton for the proposition that the plaintiff, as a tenured teacher, cannot bring a wrongful constructive discharge claim against the defendant. However, inMendillo as previously mentioned, the Connecticut Supreme Court recognized a tenured principal's wrongful constructive discharge claim, and allowed her to bring the claim without exhausting her administrative remedies against the school board. See also Stallworth v. Waterford,supra, Superior Court, Docket No. CV00 0555312 (where the court, in denying the defendant board of education's motion for summary judgment, allowed the plaintiff, a school psychologist whose collective bargaining agreement referenced § 10-151 as controlling termination grievances, to bring a constructive discharge claim.) The court finds that Appleton,
although compelling, is not controlling. Mendillo is most similar to the facts of the present case, and as such, it may instructively guide the court to the conclusion that a wrongful constructive discharge claim is cognizable and available to a tenured teacher under the circumstances of the present case.
Moreover, because the plaintiff is not an at-will employee, the court finds that she is not required to identify a violation of public policy in bringing a constructive discharge claim. It bears repeating, as noted in Cimochowski v. Hartford Public Schools, supra, 261 Conn. 306-07, that teachers are intended to be protected from arbitrary discharge, and "[s]uch protection is not afforded to at-will employees who are only protected in situation is where an important public policy has been violated . . . In affirmatively choosing to remove teachers, administrators and superintendents from the realm of at-will employees, the legislature has made clear its intent that these people shall be secure in their employment . . ." (Internal quotation marks omitted.) InSheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471, 474, 427 A.2d 385
(1980), our Supreme Court discussed whether to recognize an "exception to CT Page 3818-h the traditional rules governing employment at will so as to permit a cause of action for wrongful discharge where the discharge contravenes a clear mandate of public policy." (Emphasis added.) In its discussion, theSheets court noted that it was "mindful that the myriad of employees without bargaining power to command employment contracts for a definite term are entitled to a modicum of judicial protection when their conduct as good citizens is punished by their employers." Id., 477. In extending that modicum of judicial protection, the court held that the recognition of a tort claim for wrongful discharge was proper when an employee was discharged in violation of a public policy. Id., 480. The court, however, made its ruling in the context of at-will employment where employees are without the bargaining power to be secured by a contract for definite terms. The wrongful discharge claim, which is established inSheets as an exception to the general rule of at-will employment, was contemplated as a way for at-will employees to bring a wrongful discharge cause of action. The exception did not contemplate tenured teachers protected by a collective bargaining agreement.
Accordingly, under the facts and holding of Mendillo and Sheets, and pursuant to General Statutes § 10-151(d) and the collective bargaining agreement between the parties of the present case, the court finds that the plaintiff is not required to state a violation of public policy in bringing a wrongful constructive discharge claim. The collective bargaining agreement and § 10-151(d) are relied upon to protect the employment relationship between the plaintiff and the defendant when there is a grievance concerning a discharge, not public policy. As seen in Mendillo, when the these two instruments fail to address a tenured teacher's grievance of a constructive discharge, public policy plays no role. The terms of the statute or agreement, or lack thereof, are dispositive in determining whether the plaintiff must seek an administrative remedy or other redress in the context of the present case, and not public policy.
"A constructive discharge is nevertheless a discharge." (Internal quotation marks omitted.) Lathrop v. East Hampton, Superior Court, judicial district of Middlesex at Middletown, Docket No. CV 97 0083839 (May 23, 2001, Parker, J.) In Lathrop, the court held that the plaintiff, a police officer, could not bring a constructive discharge claim because the collective bargaining agreement he was bound by had a provision stating that no police officer could be discharged without just cause. The court therefore determined that a claim for constructive discharge was contemplated by the collective bargaining agreement, because the plaintiff's constructive discharge claim was simply a claim of a discharge without just cause. The court held that the plaintiff should have exhausted the grievance procedures of the agreement. CT Page 3818-i
In the present case, the collective bargaining agreement also contains a just cause provision, however, it does not mention discharges, only disciplinary actions, reprimands, and suspensions. The agreement could have easily included discharges, and the plaintiff would have been required to pursue her administrative remedies via the collective bargaining agreement. However, in light of Mendillo and Lathrop, the court finds that the just cause provision of the agreement and General Statutes § 10-151(d) are what bound and protected the plaintiff in the present case, and not public policy. Therefore, as seen in Mendillo, a violation of public policy need not be alleged nor proved by a tenured teacher who asserts a wrongful discharge claim where the collective bargaining agreement provides no recourse or resolution of such a claim.
Clarance J. Jones, Judge